THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TONY PRATCHER, Defendant-Appellant.

Second District    No. 2—01—0055

Opinion filed August 9, 2002.

Douglas R. Roberts, of Law Offices of Douglas Roberts & Associates, P.C., of Waukegan, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz and Peggy F.J. Bradford, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, Tony Pratcher, was charged with one count each of unlawful possession with the intent to deliver more than 1 gram but less than 15 grams of a substance containing cocaine (count I) (720 ILCS 570/401(c)(2) (West 2000)), unlawful possession with the intent to deliver more than 30 grams but not more than 500 grams of cannabis (720 ILCS 550/5(d) (West 2000)), unlawful possession of less than 15 grams of a substance containing cocaine (720 ILCS 570/402(c) (West 2000)), and possession of more than 30 grams but not more than 500 grams of cannabis (720 ILCS 550/4(d) (West 2000)). Following a stipulated bench trial, defendant was found guilty of all the charges except count I. Defendant appeals and contends that the trial court erred in denying his motion to suppress evidence. For the reasons that follow, we agree and reverse the trial court's ruling.

Defendant responded to the charges against him by filing a motion to suppress evidence. At a hearing on the motion, the State called as a witness Kirk Henderson, a sergeant with the Zion police department. Henderson testified that on June 7, 2000, about 5:30 p.m., he was on duty in a fully marked squad car that was being driven by his partner, Lieutenant Dumyahn. Henderson observed a car driving northbound down the center of the road in the 2800 block of Gilead Street, a two-lane, north-south residential street in Zion. Henderson later observed the car moving northbound completely in the southbound lane of Gilead Street. Henderson told Dumyahn that they should stop the car. The squad car pursued the car and caught up with it. Dumyahn then activated the squad car's emergency lights. The car traveled about two more blocks and made at least one turn before it stopped in an alley. Defendant was the driver and sole occupant of the car.

As defendant's car came to a stop, Henderson observed defendant stick his hand into a compartment between the car's visors. Henderson was unable to determine whether defendant had anything in his hand when he removed it from the compartment.

Henderson then observed defendant open the driver's door to his car and begin to exit the car. Henderson quickly exited the squad car and moved toward defendant's car while giving defendant verbal commands to remain in the car. Defendant complied with Henderson's commands and sat back down in his car leaving the driver's door open.

As he approached defendant's car, Henderson observed defendant quickly put his right hand down toward the center console area between the front seats of the car and stick his hand into a compartment there. Upon reaching the open driver's door of defendant's car, Henderson told defendant the reason for the stop and requested

defendant's driver's license and insurance card. After receiving these items, Henderson asked the police dispatcher to check the validity of the license and to check for outstanding warrants on defendant.

While waiting for the dispatcher's response, defendant remained seated in his car. Henderson was standing between the open driver's door and defendant. From that vantage point, Henderson observed defendant rapidly pivot and lean forward in the driver's seat several times as if he was trying to exit the car. Henderson also observed defendant thrust himself toward the front passenger floorboard of the car as if trying to grab something there. When defendant did this, his body obstructed Henderson's view.

The dispatcher informed Henderson that defendant's driver's license was not suspended or revoked and that there were no outstanding warrants on defendant. Henderson then asked defendant to step out of the car and put his hands on the roof of the car so that Henderson could pat down defendant. Henderson testified that he made this request to determine whether defendant was carrying a weapon. On cross-examination, Henderson acknowledged that he was also concerned that defendant might be attempting to conceal contraband. Defendant complied with Henderson's request.

Henderson conducted a pat-down search of defendant's clothing. Upon reaching defendant's left front pants pocket, from the outside of the pocket and through defendant's clothing, Henderson felt what he believed was a quantity of cannabis in the pocket. Henderson explained that he believed that what he felt in defendant's pocket was cannabis because "it was tightly compressed, soft, pliable. It appeared contained because I wasn't able to spread it out." Henderson testified that, during the more than eight years that he had been conducting traffic stops, he had come into contact with cannabis over 100 times and had felt cannabis in someone's pocket at least 20 times. Henderson acknowledged that he was not able to determine through defendant's clothing whether what he felt in defendant's pocket contained any seeds or stems.

After feeling the object in defendant's pocket, Henderson asked defendant what it was. Defendant replied, " 'My Stuff.' " Henderson then asked defendant if he, Henderson, could take the item out of defendant's pocket. Defendant replied that he would take the item out of his pocket himself. After rummaging around in his pocket, defendant pulled out an item that he clenched tightly in his fist. Henderson subsequently determined that the item in defendant's fist was a plastic bag containing a quantity of suspected cannabis. Henderson then arrested defendant. Henderson also later issued traffic citations to defendant for driving down the center of the road.

The testimony of Steven Dumyahn, a Zion police lieutenant, generally corroborated Henderson's testimony regarding the stop of defendant's car. After the stop, Dumyahn exited the squad car and stood at the rear passenger side of defendant's car. Dumyahn corroborated Henderson's testimony as to defendant's initial movements indicating an intent to exit his car; Henderson's shouted commands for defendant to stay in the car; and defendant's quick movements toward the center and right floorboard areas of the car. Dumyahn did not observe defendant reach into the area between the visors of the car.

After defendant was arrested, Dumyahn searched the front passenger side of defendant's car. Under the front seats toward the center of defendant's car, Dumyahn found a plastic grocery bag that contained a large plastic freezer bag with a "large quantity" of a green leafy substance. The shopping bag also contained several smaller plastic bags. Some of the smaller bags also contained a green leafy substance. Under the center armrest, Dumyahn found a handheld scale.

Following the hearing, the trial court denied defendant's motion to suppress evidence. The court later conducted a stipulated bench trial and found defendant not guilty of count I and guilty of the other three charges. The trial court subsequently denied defendant's motion for a new trial and sentenced defendant to probation for a period of 24 months with 9 months of periodic imprisonment, 175 hours of public service, and various conditions, fines, costs, and fees. Defendant's timely notice of appeal followed.

On appeal, defendant contends that the trial court erred in denying his motion to suppress evidence because (1) the police were not justified in conducting a pat-down search of defendant after learning that defendant had a valid driver's license and that there were no outstanding warrants for defendant, and (2) even if the pat-down search was proper, the police exceeded the permitted scope of the search. Because we can resolve the appeal on the scope issue, we need not address the validity issue.

■ We initially note our standard of review. Traditionally, when a trial court's ruling on a motion to suppress evidence involved factual determinations and credibility assessments, a reviewing court would reverse a trial court's ultimate ruling only if it was manifestly erroneous. *People v. Sorenson*, 196 Ill. 2d 425, 430-31 (2001). However, *de novo* review is appropriate where neither the facts nor the credibility of the witnesses is disputed. *People v. Anthony*, 198 Ill. 2d 194, 201 (2001).

Here, neither the facts nor the credibility of the witnesses is disputed. We will therefore review *de novo* the question of defendant's

legal challenge to the denial of his motion to suppress. See *Sorenson*, 196 Ill. 2d at 431.

Citing *Minnesota v. Dickerson*, 508 U.S. 366, 124 L. Ed. 2d 334, 113 S. Ct. 2130 (1993), and *People v. Mitchell*, 165 Ill. 2d 211 (1995), defendant contends that Henderson's pat-down search exceeded the permitted scope of such a search. Defendant argues that Henderson's search was constitutionally invalid because Henderson went beyond the permitted scope of the pat-down search when, upon feeling the object in defendant's left front pants pocket, Henderson squeezed, slid, and otherwise manipulated the contents of the pocket through defendant's clothing.

The State responds that the proper application of the principles enunciated in *Dickerson* and *Mitchell* shows that Henderson's search of defendant did not exceed the scope permitted for a pat-down search. The State argues that, based on his experience, Henderson was able to sufficiently recognize that the object that he felt through defendant's clothing was cannabis and that Henderson therefore had probable cause to request defendant to remove the object from his pocket.

In *Dickerson*, a police officer observed the defendant walk out of a known "crack house." After spotting the officer's squad car and making eye contact with an officer, the defendant abruptly came to a halt and began walking in the opposite direction. The police then stopped the defendant and ordered him to submit to a pat-down search. The search did not reveal any weapons. However, the officer conducting the search felt a small lump in the front pocket of the defendant's nylon jacket. The officer testified that, after examining the object with his fingers, the object " 'slid and it felt to be a lump of crack cocaine in cellophane.' " *Dickerson*, 508 U.S. at 369, 124 L. Ed. 2d at 341, 113 S. Ct. at 2133. After reaching into the defendant's pocket and retrieving a small plastic bag containing a lump of suspected crack cocaine, the officer arrested the defendant.

In *Dickerson*, the Supreme Court reviewed the principles set out in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), that allow a warrantless investigative stop. The Court reiterated that the purpose of the limited search permitted during a *Terry* stop was to determine whether the person searched was carrying a weapon, not to discover evidence of a crime. Consequently, a *Terry* search is strictly limited to only what is necessary for the discovery of weapons that might harm the officer. If the search goes beyond those limits, "it is no longer valid under *Terry* and its fruits will be suppressed." *Dickerson*, 508 U.S. at 373, 124 L. Ed. 2d at 344, 113 S. Ct. at 2136.

In *Dickerson*, the Court determined that a police officer conducting a *Terry* search may properly seize nonthreatening contraband

detected during a protective pat-down search as long as the search remains within the limits required by *Terry*. In describing these limits, the Court stated that "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." *Dickerson*, 508 U.S. at 375, 124 L. Ed. 2d at 346, 113 S. Ct. at 2137. In applying these principles, the Court agreed with the Minnesota Supreme Court, which had concluded that the officer exceeded the limits of a permissible *Terry* stop. The Court commented that the continued exploration of the defendant's pocket by the officer after he concluded that the pocket did not contain a weapon was unrelated to the sole justification of a *Terry* search, *i.e.*, the protection of the police and others. *Dickerson*, 508 U.S. at 378, 124 L. Ed. 2d at 347, 113 S. Ct. at 2138-39.

In *Mitchell*, a police officer conducted a pat-down search of the defendant after concluding that the car that the defendant had been driving may have been stolen and after observing drug paraphernalia inside the car. During the search, the officer felt an object inside the defendant's shirt pocket. To the officer, the object felt like a piece of rock inside a small Baggie. The officer reached inside the pocket, pulled the object out, concluded that the object was rock cocaine, and arrested the defendant for drug possession.

In *Mitchell*, our supreme court first held that the "plain touch" doctrine described in *Dickerson* does not violate article I, section 6, of the Illinois Constitution. *Mitchell*, 165 Ill. 2d at 222. The court then adopted the reasoning in *Dickerson*. *Mitchell*, 165 Ill. 2d at 225. In elaborating on the reliability of tactile perceptions, the court stated:

> "When objects have a distinctive and consistent shape that an officer has been trained to detect and that officer has had previous experience in detecting such objects, his tactile perceptions can provide him with the same recognition that his sight would have provided. [Citations.] We caution that the officer's belief must be objectively reasonable, in light of his past experience and training, and capable of verification." *Mitchell*, 165 Ill. 2d at 227.

The court added that the "plain touch" doctrine "does not permit the search to exceed the initial intrusion. As soon as the officer is satisfied that an object is not a weapon, a further search to determine the nature or identity of the object is impermissible." *Mitchell*, 165 Ill. 2d at 228.

In applying these principles, the *Mitchell* court found that the requirements for seizure under the "plain touch" doctrine were met and that the officer's seizure of the object was therefore proper. In

response to the defendant's argument that it was not possible for the officer to have immediately identified the object, the court stated:

> "Given that [Officer] King observed the drug paraphernalia on the seat of the car, he likely suspected that drugs were present, either on defendant's person or in the vehicle. Thus, it is conceivable that King's prior police experience with drugs, coupled with his observation of drug paraphernalia on the seat and his tactile perceptions of the object in defendant's pocket, enabled his ready tactile identification of the object." *Mitchell*, 165 Ill. 2d at 231.

■ In this case, we believe that the facts are closer to those in *Dickerson* than those in *Mitchell*. Here, unlike in *Mitchell*, Officer Henderson did not observe any drug paraphernalia in defendant's car before he conducted the pat-down search of defendant. Furthermore, Henderson testified that when he felt the object in defendant's pocket he knew it was not a weapon. Henderson also testified that he believed the object was cannabis because "it was tightly compressed, soft, pliable. It appeared contained because I wasn't able to spread it out." This suggests that after Henderson had concluded that there were no weapons in defendant's pocket he nonetheless continued his search of the pocket's contents to determine the nature of the object that he felt. Consequently, Henderson's search went beyond the permissible limits for such a search under *Dickerson* and *Mitchell*.

Because we decide this case on the scope issue, we emphasize that our decision does not encroach on an officer's ability to protect himself in the field. The Supreme Court recognized in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), that, aside from "the governmental interest in investigating crime," a police officer has "the more immediate interest *** in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him." *Terry*, 392 U.S. at 23, 20 L. Ed. 2d at 907, 88 S. Ct. at 1881. "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties," the Court observed. *Terry*, 392 U.S. at 23, 20 L. Ed. 2d at 907, 88 S. Ct. at 1881.

Because Henderson's search exceeded the permitted scope of a pat-down search under the "plain touch" doctrine, the trial court erred in denying defendant's motion to suppress evidence. Accordingly, we reverse the trial court's order that denied defendant's motion to suppress and remand the cause for further proceedings consistent with this disposition.

Reversed and remanded.

GEIGER and CALLUM, JJ., concur.