No. 2--02--1182

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE OF THE STATE      ) Appeal from the Circuit Court

OF ILLINOIS,      ) of Kendall  County.

      )

Plaintiff-Appellant        )

      )

v.      ) No. 01--CF--225

      )       01--TR--1181-82
 

             ) 

CHARLIE MORQUECHO,
      ) Honorable

        ) Leonard J. Wojtecki,

Defendant-Appellee.
      ) Judge, Presiding. 

_____________________________________________________________________________
 
    JUSTICE McLAREN delivered the opinion
 
of the court:

The State appeals from the trial court's order granting the motion of defendant, Charlie Morquecho
 to quash arrest and suppress evidence
.  We affirm.

Defendant was charged with one count each of unlawful possession with intent to deliver a controlled substance (720 ILCS 570/401(a)(2)(A) (West 2000)), unlawful delivery of a controlled substance (720 ILCS 570/401(c)(2) (West 2000)), and unlawful possession of a controlled substance (720 ILCS 570/402(a)(2)(A) (West 2000)).  The trial court granted defendant's motion to quash arrest and suppress evidence and subsequently denied the State's motion to reconsider.  The State then filed a notice of appeal and a certificate of impairment.

At the hearing on the motion, defendant presented the testimony of Officer Jeff Ackland of the Plano police department.  Ackland stated that, on the afternoon of August 5, 2001, he was assisting three Kendall County sheriff's deputies as they made an undercover drug purchase from a man named Antonio Gonzalez.  Ackland's role was to detain "any other perp" in Gonzalez's car.  The officers anticipated that another person would be with Gonzalez, although they did not know who that person might be.  Ackland saw a black Ford Mustang enter the parking lot of the Eagle Dollar Store in Plano, where he was waiting in a van with the deputies.  He recognized the vehicle as defendant's car from two prior contacts with defendant.  Defendant was in the passenger seat and Gonzalez was driving.  Ackland believed that Gonzalez got out of the car and entered an undercover police car; defendant did not enter that car.  After a few minutes, Ackland received the "arrest signal," which meant that the drug buy had been made and that he was to detain the passenger.  Up to that time, he had not seen defendant violate any law.

Ackland went to the passenger side of the car with his gun drawn and "asked" defendant to get out of the car.  When defendant got out of the car "on his own free will," Ackland placed him on his stomach and handcuffed him.  Ackland had no arrest or search warrant for defendant, nor did he receive defendant's consent to search his body.  Deputy DeCamp patted down defendant and noticed a bulge in defendant's right sock.    Inspector Whowell found cocaine in the sock.  

Ackland had been a police officer for 2½ years and had arrested people on drug-related charges.  None of those arrestees had been armed, but he had learned in his academy training that drug dealers and people in possession of narcotics often carry weapons. 

The State presented the testimony of Inspector Chris Biggs of the Oswego police department.  Biggs was assigned to the Kendall County Cooperative Police Assistance Team (CPAT), which was a county-wide drug task force.  He had previously made undercover drug buys from Gonzalez and was to make another such buy on August 5, 2001.  Biggs was alone in an undercover police car parked in the Eagle Store parking lot.  Gonzalez drove up in a black Mustang with an unknown man in the passenger seat.  Biggs subsequently identified defendant as the passenger.  Gonzalez parked about 20 feet away from Biggs and entered the undercover car.  After Gonzalez gave him cocaine, Biggs gave the prearranged arrest signal, and other officers arrested both Gonzalez and defendant.  Biggs never saw defendant do anything other than sit in the car.  

Biggs had been a police officer for four years and had been assigned to CPAT for 1½ years.  He had training in narcotics enforcement and had been involved in undercover operations and executions of search warrants in drug cases.  He learned that weapons are commonly involved in drug possession and delivery situations.  Although the possibility of weapons was "always a concern going into a situation" involving narcotics, there were no particular facts that led the officers to believe that either Gonzalez or defendant was armed that day

The State also presented the testimony of Deputy Tim DeCamp of the Kendall County sheriff's department.  He had been a deputy for about five years and had arrested people who either sold or possessed narcotics.  On the afternoon of August 5, 2001, he
 was assigned to CPAT and was in the van in the Eagle parking lot.  He never saw defendant leave the Mustang before "the detention and subsequent arrest."  After the arrest signal was given, DeCamp and Ackland opened the passenger door of the Mustang and "asked" defendant to get out of the car.  When defendant was partially out of the car, they grabbed him by the arm and "ask[ed] him to get onto the ground."  He was then handcuffed behind his back.  Defendant did not resist at any time.  Based on his prior training and experience, DeCamp knew that narcotics dealers often carry weapons.  He patted down defendant and noticed "an unusual bulge," smaller than a golf ball, in defendant's right sock.  He testified that "it did not feel like a weapon."  He did not roll it around or move it once he made contact with it.  Believing that the bulge may have been narcotics, DeCamp notified Inspector Whowell, who subsequently removed what appeared to be narcotics from defendant's sock.  Prior to arresting defendant, DeCamp did not see defendant violate any laws.  At the time of the arrest, the police had "no concrete evidence" that defendant was involved in Gonzalez's delivery of cocaine; it was, however, "a possibility."  

The trial court held that the police lacked probable cause to arrest defendant and granted the motion to quash arrest and suppress evidence.  The court concluded:

"There is not even enough here for a 
Terry
 stop.  There is not even enough here to bring any suspicion that the defendant's involved in any kind of criminal activity whatsoever. *** Clearly, the defendant was under arrest in this case.  An arrest signal was given, the acts of the officer in taking him out of the car was [
sic
] clearly an arrest, and even if I accept that it's not, there are no facts that would lead me to believe that a pat down was required of the defendant."

In reviewing a trial court's ruling on a motion to suppress, an appellate court may reverse the court's findings of historical fact only if they are against the manifest weight of the evidence.  
People v. Sorenson
, 196 Ill. 2d 425, 431 (2001).  However, the appellate court must review 
de novo
 the ultimate conclusion of the trial court as to the existence of probable cause or reasonable suspicion.  
Sorenson
, 196 Ill. 2d at 431. 

The State does not argue that it had probable cause to arrest defendant because of Gonzalez's drug sale.  Instead, the State contends that, given "the totality of the circumstances," the officers should have been permitted to detain defendant and search him for weapons.  Pursuant to
 
Terry v. Ohio
, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880 (1968), an officer may conduct a limited search for weapons once he reasonably concludes that the person whom he legitimately stopped poses a threat to his safety or the safety of others.  
People v. Gonzalez
, 184 Ill. 2d 402, 421 (1998).  The officer's conduct must be based on more than a mere hunch; it must be supported by specific, articulable facts that, when taken together with natural inferences, reasonably warrant a belief that the officer's safety, or that of others, is in danger.  
Gonzalez
, 184 Ill. 2d at 422.
  The sole justification of such a search is to protect the police officer and others nearby, not to gather evidence.  
Sorenson
, 196 Ill. 2d at 432.  Because of this, the search must be limited in scope to a search designed to discover guns, knives, clubs, or other weapons that can be used to assault the officer or others.  
Gonzalez
, 184 Ill. 2d at 421–22.  If an officer wishes to search for evidence of other criminal activity, such as drugs, he must have probable cause to do so.  
People v. Holliday
, 318 Ill. App. 3d 106, 111 (2001).  If a search goes beyond what is necessary to determine if a suspect is armed, it is no longer valid under 
Terry
, and its fruits will be suppressed.  
Sorenson
, 196 Ill. 2d at 432.

Assuming, 
arguendo
, that defendant was not arrested when two officers pulled him from the car at gunpoint, put him on the ground, and handcuffed him, we still conclude that the pat-down search exceeded the bounds of a 
Terry
 search and degenerated into a search for evidence of a crime.  The pat-down revealed nothing other than "an unusual bulge," smaller than a golf ball, in defendant's right sock
.  Deputy DeCamp testified that the bulge "did not feel like a weapon."  Since the only possible  factual  basis for the search, in the absence of an arrest, was officer safety, investigating an "unusual bulge" in defendant's sock that "did not feel like a weapon" went beyond the scope of a search for weapons.
  Finding no weapons that could threaten the officers' safety, the officers had no factual or legal
 
reason to search further. 

The dissent argues that Deputy DeCamp had probable cause to believe that defendant possessed drugs and that the bulge in defendant's sock contained contraband because defendant accompanied someone involved in a drug transaction.  See slip op. at 11.  Even the
 
State does not go this far.  The State denies that it arrested defendant when it removed him from the car at gunpoint and searched him.  According to the State, the search was only a 
Terry
 search for weapons.  Each officer testified that he did not see defendant violate any law before he was removed from the car.  Deputy DeCamp testified they had "no concrete evidence" that defendant was involved in Gonzalez's delivery of cocaine
.  In the absence of evidence or even argument by the State, it is inappropriate for the dissent to claim that probable cause existed.  The trial court found that there were insufficient facts to establish any basis for a stop, let alone a pat-down search.  The dissent reweighs the evidence and finds that there was probable cause based upon possibilities rather than probabilities. The dissent determines probable cause existed by transferring to defendant the facts relating to the person who actually committed the sale and delivery of contraband. Essentially, the dissent determines guilt by association.

The State argues that the "plain touch" doctrine allowed for the recovery of the cocaine from defendant's sock.  Under this doctrine, if an officer lawfully pats down a suspect's outer clothing and feels an object whose mass or contour makes its identity immediately apparent, there is no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons, and the item may be seized.  
People v. Mitchell
, 165 Ill. 2d 211, 225 (1995).  The 
Mitchell
 court reasoned:

"When objects have a distinctive and consistent shape that an officer has been trained to detect and that officer has had previous experience in detecting such objects, his tactile perceptions can provide him with the same recognition that his sight would have provided."  
Mitchell
, 165 Ill. 2d at 227. 

However, this doctrine does not permit a search to exceed the initial intrusion; as soon as the officer is satisfied that the object is not a weapon, a further search to determine the nature or identity of the object, such as through manipulation of the object, is impermissible.  
Mitchell
, 165 Ill. 2d at 228–29.

This court dealt with the "plain touch" doctrine in 
People v. Pratcher
, 332 Ill. App. 3d 1063 (2002).  In 
Pratcher
, the defendant was searched for weapons after he was pulled over for a driving violation.  The arresting officer was "also concerned that defendant might be attempting to conceal contraband."  
Pratcher
, 332 Ill. App. 3d at 1065.  The officer testified that he felt in the defendant's pants pocket what he "believed *** was cannabis because 'it was tightly compressed, soft, pliable.  It appeared contained because I wasn't able to spread it out.' "  
Pratcher
, 332 Ill. App. 3d at 1065.  The officer also stated that he had come into contact with cannabis more than 100 times and had felt cannabis in someone's pocket at least 20 times.  
Pratcher
, 332 Ill. App. 3d at 1065.  This court reversed the trial court's denial of the defendant's motion to suppress evidence, concluding that the officer continued to search the contents of the defendant's pockets to determine the nature of the object even after he determined that there were no weapons in the pocket.  
Pratcher
, 332 Ill. App. 3d at 1069.

While the facts are not identical,  
Pratcher
 is instructive.  The officer in 
Pratcher
 manipulated the item to achieve a better idea that the item was contraband.  Based on his prior experience, he then achieved a stronger belief than that of Deputy DeCamp that the defendant possessed contraband.  He was able to determine the type of contraband and describe the information upon which he based his belief.  Nevertheless, the evidence was suppressed because the search went beyond the scope of its original purpose.

 Here, Deputy DeCamp testified that he noticed "an unusual bulge" that did not feel like a weapon.  He "believed it was possibly narcotics."  However, he did not immediately remove the item; he called Inspector Whowell, who removed the item in the sock.  There was no evidence that DeCamp recognized the identity of this bulge, based on its size or feel, from his prior detection of concealed narcotics.  He testified that he "believed" that the item was "possibly narcotics."  Such nebulous recognition of unspecified "narcotics" is not the type of tactile perception upon which "plain touch" is based.

In comparing this case to 
Mitchell
, the dissent finds "insignificant" the distinction between Deputy DeCamp's testimony that the "unusual bulge" was "possibly narcotics" and the testimony of the officer in
 Mitchell
 that what felt "like a piece of rock inside a small baggie" was " 'probably rock cocaine' "  (
Mitchell
, 165 Ill. 2d at 231).  See slip op. at 16.  However, words do have meaning, and possibility versus probability is not a distinction without a difference.  At the core of the "plain touch" doctrine is the immediately apparent identity of the object.  See 
Mitchell
, 165 Ill. 2d at 225.
   One can never be 100% positive that what one feels but does not see through someone's clothing is a particular item.  However, probability, based on one's prior experiences, is a higher degree of certainty than possibility.  Anything is "possible," but not everything is "probable."  The dissent would reduce the "plain touch" doctrine to the "hunch touch" doctrine. 

DeCamp's supposed perception of the identity of the item is belied by the fact that DeCamp called on Inspector Whowell to remove the item.  This break in continuity between DeCamp's search and Whowell's removal of the item also violates the reasoning behind the "plain touch" doctrine.  It is the searching officer's "tactile perceptions" that are implicated by this doctrine
.  
The dissent disingenuously asserts that Whowell's removal of the bulge from defendant's sock was nothing more than an opportunity "to verify the reasonableness of Deputy DeCamp's belief that the bulge was narcotics."  Slip op. at 17.  The logic undergirding this assertion would allow any number of fellow police officers to try their "tactile perceptions" to "verify" the identity of an item found during a search. 
 
"Plain touch" does not allow an officer to call in other officers to investigate a finding; either the initial feel of the item reveals its identity to the officer or it does not.  Further investigation by others is not allowed.
    

Once DeCamp called in Whowell to remove the item, the search was no longer about weapons and officer safety, since DeCamp knew that the bulge was not a weapon.  Whowell performed another search of defendant when he took the item from defendant's sock.  The search of defendant exceeded the initial intrusion and became "a further search to determine the nature or identity of the object"; this is impermissible.  See 
Mitchell
, 165 Ill. 2d at 228.  Therefore, the "plain touch" doctrine does not rescue this search from constitutional infirmity.  The trial court did not err in granting defendant's motion to quash arrest
 and
 suppress evidence.  
              
  

           For these reasons, the judgment of the circuit court of Kendall  County is affirmed.

Affirmed.

HUTCHINSON, J., concurs.

JUSTICE GILLERAN JOHNSON, dissenting:

I respectfully dissent.  I believe that the trial court erred in granting the defendant's motion to quash arrest and suppress evidence.  Specifically, I disagree with the trial court's determination that the defendant was under arrest and its determination that there was insufficient evidence to justify a 
Terry
 stop.  Furthermore, I disagree with the majority's conclusion that the pat-down search of the defendant exceeded the bounds of a 
Terry
 search and degenerated into a search for evidence of a crime.  Traditionally, a trial court's ruling on a motion to suppress evidence is subject to reversal only if manifestly erroneous.  
People v. Mitchell
, 165 Ill. 2d 211, 230 (1995).  However, when an appellate court reviews a ruling on a motion to suppress involving a question of probable cause or reasonable suspicion, the reviewing court should review 
de
 
novo
 the ultimate finding with respect to probable cause or reasonable suspicion.  
People v. Sorenson
, 196 Ill. 2d 425, 431 (2001).    

Special law enforcement concerns will sometimes justify traffic stops without individualized suspicion.  
Illinois v. Lidster
, 540 U.S. ___, ___, 157 L. Ed. 2d 843, 851, 124 S. Ct. 885, 889 (2004).  Under 
Terry
, a law enforcement officer may, within the strictures of the fourth amendment, conduct a brief, investigative stop of an individual, absent probable cause to arrest, provided the officer has a reasonable, articulable suspicion of criminal activity.  
People v. Gonzalez
, 204 Ill. 2d 220, 227 (2003). 
A 
Terry
 stop is deemed reasonable if the officer's action in initiating the stop was justified and if the officer's action during the course of the stop was reasonably related in scope to the circumstances that justified the interference in the first place.  
People v. Harris
, 207 Ill. 2d 515, 522-23 (2003).  Additionally, under 
Terry
, a law enforcement officer may conduct a limited search for weapons once he reasonably concludes that the person whom he legitimately stopped poses a threat to his safety or the safety of others.  
Terry
, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880.  The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of others was in danger.  
Sorenson
, 196 Ill. 2d at 433.  In determining whether the officer acted reasonably in such circumstances, due weight must be given to the specific reasonable inferences that he was entitled to draw from the facts, in light of his experience.  
Sorenson
, 196 Ill. 2d at 433. 

In the present case, the police had sufficient specific and articulable facts to justify a 
Terry
 search of the defendant for weapons.  The defendant arrived at the scene as a passenger in a black Mustang whose driver had made arrangements to meet an undercover police officer, Officer Biggs, for the purpose of a drug sale.  The driver exited the Mustang and entered the vehicle of Officer Biggs.  The driver completed a narcotics sale to Officer Biggs.  Three police officers testified that, based on their training and experience, drug dealers commonly have weapons in their possession.  Furthermore, there is a likelihood that a car passenger is a companion to the driver and perhaps involved in the driver's criminal behavior.  
People v. Allen
, 268 Ill. App. 3d 279, 284 (1994).  In fact, Officer Ackland testified that, based on two prior contacts with the defendant where the defendant operated out of the Mustang, he knew that the defendant was the owner of the Mustang.  As such
, 
I believe that since the defendant was traveling in his own vehicle with a person involved in a prearranged drug transaction, it was reasonable for the police officers to infer that the defendant may have been carrying weapons.  See 
Sorenson
, 196 Ill. 2d at 438 (weapons and violence are frequently associated with drug transactions)
. 
 Furthermore, under these facts, it was reasonable for the police to detain the defendant for the purpose of investigating the drug sale and, in the process, frisk the defendant for weapons.  Consequently, the 
Terry
 search of the defendant was proper.  See 
Sorenson
, 196 Ill. 2d at 434 (
Terry
 search  proper where officer observed the defendant exhibit behavior consistent with a drug purchase at a known drug house and officer testified that in his experience, persons involved in drugs are known to carry weapons).  Despite the majority's contention to the contrary (slip op. at 6), I have not concluded that there was probable cause to arrest the defendant.  I have concluded only that a 
Terry
 search for weapons was proper.     

In reaching this conclusion, I disagree with the trial court's determination that the defendant was under arrest as soon as he was removed from the car.  An investigatory stop is not transformed into an arrest by the officers using force or displaying their firearms to detain the individual.  
People v. Chavez
, 327 Ill. App. 3d 18, 31 (2001).  The mere restraint of an individual does not turn an investigatory stop into an arrest.  
Chavez
, 327 Ill. App. 3d at 31.  In the present case, in light of the officers' testimony concerning the common use of weapons in drug delivery situations, asking the defendant, with their weapons drawn, to get on the ground, and handcuffing the defendant behind his back, involved an appropriate amount of force and did not transform the investigatory stop into an arrest.  See 
Chavez
, 327 Ill. App. 3d at 31 (restraint of the defendant did not turn an investigatory stop into an arrest); 
People v. Waddell
, 190 Ill. App. 3d 914, 927-28 (1989) (in light of the risks inherent in interdicting drug traffic, the handcuffing of the defendant did not transform the 
Terry
 stop of the defendant into an arrest).

Finally, the search of the defendant did not exceed the bounds of 
Terry
.  Rather, the "plain touch" doctrine allowed for the recovery of the contraband from the defendant's sock.  In 
Minnesota v. Dickerson
, 508 U.S. 366, 124 L. Ed. 2d 334, 113 S. Ct. 2130 (1993), the Supreme Court held that if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons.  
Dickerson
, 508 U.S. at 375-76, 124 L. Ed. 2d at 345-46, 113 S. Ct. at 2137.  Accordingly, the Court determined that, under the "plain touch" doctrine, a police officer conducting a 
Terry
 search may properly seize nonthreatening contraband detected during a protective pat-down search as long as the search remains within the limits required by 
Terry
.  See 
People v. Pratcher
, 332 Ill. App. 3d 1063, 1067-68 (2002).   

In 
People v. Mitchell
, 165 Ill. 2d 211 (1995), our supreme court held that the "plain touch" doctrine described in 
Dickerson
 does not violate article I, section 6, of the Illinois Constitution.  
Pratcher
, 332 Ill. App. 3d at 1068; 
Mitchell
, 165 Ill. 2d at 222.  Relative to an officer's tactile perception of contraband, the court stated:

"When objects have a distinctive and consistent shape that an officer has been trained to detect and that officer has had previous experience in detecting such objects, his tactile perceptions can provide him with the same recognition that his sight would have provided. [Citations.] We caution that the officer's belief must be objectively reasonable, in light of his past experience and training and capable of verification."  
Mitchell
, 165 Ill. 2d at 227.  

The 
Mitchell
 court also stated that, under the "plain touch" doctrine, where an officer discovers contraband in the conduct of a 
Terry
 stop and frisk, he is not required to avert his attention from such evidence.  
Mitchell
, 165 Ill. 2d at 229.  However, where an object is not readily identifiable, probable cause is absent, and "plain touch" provides no support for its seizure.  
Mitchell
, 165 Ill. 2d at 228.  Additionally, regardless of whether the officer detects the contraband by sight or by touch, he must have probable cause to believe that the item is contraband before seizing it.  
Mitchell
, 165 Ill. 2d at 232.  Probable cause does not require evidence sufficient to convict.  
People v. DeLuna
, 334 Ill. App. 3d 1, 13 (2002).  Probable cause exists when police have knowledge of facts that would lead a reasonable person to believe that a crime has occurred and that it has been committed by the defendant.  
Mitchell
, 165 Ill. 2d at 232-33. 
 Additionally, the 
Mitchell
 court cautioned that the officer's belief must be objectively reasonable, in light of his past experience and training, and capable of verification.  
Mitchell
, 165 Ill. 2d at 227.  In order to avoid any confusion, it is important to note that although there may not be probable cause to arrest, an officer can still find probable cause to believe an item is contraband before seizing it.    

In the present case, the seizure of the illegal contraband in the defendant's right sock was proper.  
Once the officers asked the defendant to exit his vehicle and handcuffed him, Deputy DeCamp proceeded to search the defendant for weapons.  Deputy DeCamp testified that he patted the defendant down and noticed "an unusual bulge," in the defendant's right sock.  He testified that "it did not feel like a weapon."  He further testified that he did not roll it around or manipulate it once he made contact with it.  He believed that the bulge "was possibly narcotics" and notified Inspector Whowell, who removed what appeared to be narcotics from the defendant's sock.

Based on these facts, the requirements of the "plain touch" doctrine were met.  Deputy DeCamp testified that after feeling the bulge in the defendant's sock, he believed the object was possibly narcotics.  Although he was searching only for weapons, Deputy DeCamp was not required to divert his attention from such evidence.  See 
Mitchell
, 165 Ill. 2d at 229.  Additionally, Deputy DeCamp specifically testified that he did not manipulate the bulge in the defendant's sock in order to make his determination that it was possibly narcotics.  Furthermore, there was probable cause for Deputy DeCamp to believe that there were drugs on the person of the defendant, because the defendant had accompanied another person to a prearranged drug transaction.  See 
Allen
, 268 Ill. App. 3d at 284 (there is a likelihood that a car passenger is a companion to the driver and perhaps involved in the driver's criminal behavior).  
As such, for purposes of the "plain touch
" 
doctrine, Deputy DeCamp had probable cause to believe that the item in the defendant's sock was contraband.    

Consequently, contrary to the majority, I do not find 
Pratcher
, 332 Ill. App. 3d 1063, instructive in the present case.  In 
Pratcher
, this court reversed the trial court's denial of the defendant's motion to suppress, because the officer's search exceeded the permitted scope of a pat- down search under the "plain touch" doctrine.  However, I believe 
Pratcher
 is distinguishable from the present case on two key points.  See slip op. at 7.  In 
Pratcher
, the officer manipulated the item in the defendant's pants pocket to achieve a better idea that the item was contraband.  In the present case, the officer did not manipulate the object in the defendant's sock in making this determination.  Also in 
Pratcher
, the defendant was pulled over for a traffic violation, which casts doubt on whether the officer had probable cause to believe that the item in the defendant's pants pocket was contraband before seizing it.  However, in the present case, the defendant was a passenger in a car whose driver had just completed a narcotics sale to an undercover police officer.  As such, it was objectively reasonable for the officer in the present case to believe that the item in the defendant's sock was contraband.     

However, I believe 
Mitchell
 is instructive in the present case
. 
 
In 
Mitchell
, the officer testified that he felt an object in the defendant's shirt pocket that he believed "was probably rock cocaine."  
Mitchell
, 165 Ill. 2d at 231.  The officer did not manipulate the object in order to make this determination.  
Mitchell
, 165 Ill. 2d at 231.  The 
Mitchell
 court found that the requirements for seizure under the "plain touch" doctrine were met and that the officer's seizure of the object was therefore proper.  
Mitchell
, 165 Ill. 2d at 231.  As the facts in the present case are very similar to those in 
Mitchell
, I believe that the seizure of the contraband from the defendant's sock was proper.

In so finding, I note that the testimony of the officer in 
Mitchell
 was slightly different from that of the officer in the present case.  In 
Mitchell
, the officer testified that the item in the defendant's pocket was "probably" rock cocaine.  In the present case, the officer testified that the bulge in the defendant's sock was "possibly" narcotics.  I acknowledge that a probability is more than a possibility.  However, under the facts in the present case, I believe this is an insignificant distinction.  In 
Mitchell
, the officer felt an object in the defendant's shirt pocket that was "probably" rock cocaine.  When considering this probability, one cannot overlook the fact that people normally carry items in their shirt pockets.  Consequently, there was also a probability that the item was not rock cocaine.  In the present case, however, the officer felt an object in the defendant's sock that he believed was "possibly" narcotics.  When considering this possibility, one cannot overlook the fact that people do not normally carry items in their socks.  Furthermore, the defendant arrived at the scene in a car whose driver had just completed a narcotics sale to an undercover police officer.  Consequently, the "possibility" that the item in the defendant's sock was contraband was highly probable under these circumstances.  In short, based on the totality of the circumstances, I do not believe that the officer's testimony that the item in the defendant's sock was "possibly" narcotics, rather than "probably" narcotics, should change the outcome of this case.  See also 
DeLuna
, 334 Ill. App. 3d at 14 (package containing contraband was properly seized pursuant to the "plain touch" doctrine, where officer's experience indicated that defendant had contraband; officer did not testify that the information he obtained as a result of touching the package led him to believe it was  probably contraband).   

Finally, despite the majority's conclusion to the contrary, the fact that Inspector Whowell was called to remove the item from the defendant's right sock does not violate the reasoning of the "plain touch" doctrine.  The 
Mitchell
 court stated that an officer's belief must be objectively reasonable and capable of verification.  
Mitchell
, 165 Ill. 2d at 227.  In this case, Deputy DeCamp testified that based on his experience and training, he believed the bulge was possibly narcotics.  Thereafter, Deputy DeCamp notified Inspector Whowell, who subsequently removed the narcotics from the defendant's sock.  There is no indication in the record that Inspector Whowell manipulated the bulge in the defendant's sock before removing it.  Consequently, such notification merely served as an opportunity for Inspector Whowell to verify the reasonableness of Deputy DeCamp's belief that the bulge was narcotics.  I believe that such verification by Inspector Whowell comports with the "plain touch" doctrine.  See 
Mitchell
, 165 Ill. 2d at 227.

In sum, I believe the 
Terry
 search of the defendant for weapons was proper.  Additionally, the seizure of the contraband from the defendant's sock did not exceed the bounds of 
Terry
.  For these reasons, I would reverse the judgment of the trial court.