Nos. 2-09-1041 & 2-09-1071 cons.        Filed:  11-9-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 09--CF--583 |
| ALBERTO RODRIGUEZ-CHAVEZ, | ) ) | Honorable Blanche Hill Fawell, |
| Defendant-Appellee. | ) | Judge, Presiding. |

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 09--CF--582 |
| EFREN CUEBAS-BARRETO, | ) ) | Honorable Blanche Hill Fawell, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the opinion of the court:

Following a traffic stop, defendants, Alberto Rodriguez-Chavez and Efren Cuebas-Barreto, were arrested and charged with unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(D) (West 2008)).  Each defendant moved to quash his arrest and suppress evidence on the basis that probable cause to arrest was absent.  The trial court granted the motions and denied the State's motions for reconsideration.  In case No. 2--09--1041, the State appeals from

the order granting Rodriguez-Chavez's motion. In case No. 2--09--1071, the State appeals from the order granting Cuebas-Barreto's motion. Because the relevant facts and legal issues in the two appeals are identical, we consolidated the appeals for decision. For the reasons that follow, we reverse the orders granting defendants' motions and remand for further proceedings.

A joint hearing was held on defendants' motions. The only witness to testify was Timothy Oko, a special agent with the Drug Enforcement Administration. Oko was part of a team of law enforcement officers conducting an undercover operation involving a controlled purchase of five kilograms of cocaine. On March 9, 2008, an undercover officer and an informant met with two men, Brandy Majares and Jose Montez, in Aurora to discuss the transaction. They agreed that the transaction would take place at a location in Addison. Oko testified, "at that time the [informant] said okay. I'm going to go back to the Addison location, count the money, and at that time Montez and Majares advised okay, we're going to go back and get the drugs."

While the meeting was taking place, members of Oko's team were conducting surveillance of Montez's residence at 27 Durango Road in Montgomery. Defendants arrived there in a minivan registered to Montez. Oko testified that the minivan had been "identified in a previous narcotics investigation." Defendants opened the garage and, according to Oko, they "began to rake half-heartedly in the backyard and the front yard." After the meeting ended, a surveillance team followed Majares and Montez (who evidently were traveling in a white pickup truck) to Montez's residence. Majares and Montez met with defendants. All four entered the house and the garage. At some point, Montez's wife arrived in a Cadillac Escalade. A van from a carpet cleaning company arrived at the same time. Montez and his wife were seen engaging in a "heated exchange," after which those two vehicles drove off. A short time later, Majares and Montez drove off in the truck. Defendants

backed out of the garage and drove away in a Chrysler Sebring. A surveillance unit followed those two vehicles. The Sebring and the truck drove in tandem, staying about a car-length apart such that other vehicles could not separate them. The vehicles proceeded from Farnsworth Avenue onto I-88. When the vehicles entered I-88, the informant received a text message and a cellular telephone call from Majares indicating that he and Montez were on their way. Oko's team planned to intercept the vehicles at the exit from I-88 to I-355 by simulating an accident and closing down the ramp. As the vehicles merged onto the exit ramp, the State Police activated lights at the top of the ramp. The two vehicles then abruptly pulled back onto I-88. After the vehicles exited onto Highland, police effected a traffic stop and defendants were arrested.

Although the trial court expressly found that Oko's testimony was credible, the court concluded that the circumstances he described were insufficient to supply probable cause to arrest defendants. The trial court denied the State's motions for reconsideration and these appeals followed.

In its initial briefs in both appeals, the State's argument is limited to the issue of whether there was probable cause to arrest defendants. In its reply briefs, however, the State argues that the evidence that defendants seek to suppress was obtained as a result of a lawful investigative detention pursuant to Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Cuebas-Barreto has moved to strike the portion of the State's reply brief advancing this argument. We ordered the motion and the State's objection taken with the case. Under Supreme Court Rule 341(j) (210 Ill. 2d R. 341(j)), it is improper to raise an issue for the first time in a reply brief. The State acknowledges that it forfeited its argument by not raising it in its initial brief. However, the State asks this court to consider the argument, allowing Cuebas-Barreto to file a surreply brief so as to prevent any prejudice to him. As will be seen, however, we agree with the State's original position that the arrests were

supported by probable cause and that the trial court's orders must be reversed. Thus, we have no reason to consider whether <u>Terry</u> provides an alternative basis for reversal, and additional briefing on the issue would be a pointless exercise. We therefore grant Cuebas-Barreto's motion to strike the portion of the State's reply brief in case No. 2--09--1071 raising the argument based on <u>Terry</u>.

Turning to the merits, we first note that, on appeal from a trial court's decision to quash an arrest and suppress evidence because probable cause was absent, the trial court's findings of fact will be reversed only if they are against the manifest weight of the evidence. <u>People v. Walter</u>, 374 Ill. App. 3d 763, 765 (2007). "However, a reviewing court will review <u>de novo</u> the ultimate question of whether a motion to quash and suppress should be granted on a given set of facts." <u>Walter</u>, 374 Ill. App. 3d at 765.

Probable cause for an arrest exists "when the totality of the facts and circumstances known to the officer is such that a reasonably prudent person would believe that the suspect is committing or has committed a crime." <u>People v. Johnson</u>, 368 Ill. App. 3d 1073, 1081 (2006). Here, the facts known to law enforcement officers were easily sufficient to lead a reasonably prudent person to believe that defendants were engaged in a criminal enterprise with Majares and Montez. While Majares and Montez were in Aurora finalizing the details of the transaction, defendants were at Montez's house, doing yardwork, evidently without much enthusiasm. Majares and Montez told their ostensible purchasers that they would get the drugs and bring them to Addison, where the sale would be completed. When Majares and Montez arrived at Montez's home, defendants suspended their labors and had a brief meeting with Majares and Montez. When Majares and Montez drove off in a truck--apparently to consummate the drug deal--defendants followed in a Chrysler Sebring that had been parked in Montez's garage. Before being stopped by police, the two vehicles traveled a

substantial distance--about 23 miles according to the State--remaining only about a car-length apart during the journey. The most obvious explanation for all these circumstances is that defendants were in cahoots with Majares and Montez. A reasonably prudent person with knowledge of these circumstances would conclude that defendants had come to Montez's home not to do yardwork, but to assist Majares and Montez with the consummation of the sale of a significant quantity of cocaine.

Cuebas-Barreto makes an unconvincing attempt to minimize the significance of various circumstances discussed above. He insists that there is nothing suspicious about the fact that he and Rodriguez-Chavez were raking the yard. That they showed no zest for the task is, in Cuebas-Barreto's view, unsurprising--raking, he points out, is simply a tedious chore. Cuebas-Barreto notes that, although he and Rodriguez-Chavez were seen engaging in a brief conversation with Majares and Montez, law enforcement officers did not hear what was said and did not know whether the conversation pertained to the drug transaction that had just been planned. He stresses that the police had no indication that he and Rodriguez-Chavez had any contact or communication with Majares and Montez after leaving Montez's home. Furthermore, he emphasizes that the Sebring and the pickup truck were stopped miles away from the site chosen for the drug deal and that Oko's team had no way of knowing whether that was their destination. According to Cuebas-Barreto, "[t]here were any number of locations to which [he and Rodriguez-Chavez] may have been traveling that were distinct from the spot of the drug transaction, despite the fact that their initial course of travel tracked the route [that Majares and Montez were taking]."

The argument might be persuasive if probable cause were the equivalent of proof beyond a reasonable doubt. That is not the standard, however. People v. Wear, 229 Ill. 2d 545, 564 (2008). "Indeed, probable cause does not even demand a showing that the belief that the suspect has

committed a crime be more likely true than false." Wear, 229 Ill. 2d at 564. Thus, the existence of possible innocent explanations for the individual circumstances or even for the totality of the circumstances does not necessarily negate probable cause. See People v. Schmitt, 346 Ill. App. 3d 1148, 1153 (2004), quoting Illinois v. Gates, 462 U.S. 213, 244 n.13, 76 L. Ed. 2d 527, 552 n.13, 103 S. Ct. 2317, 2335 n.13 (1983) (" 'In making a determination of probable cause[,] the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts' "). We note that Cuebas-Barreto's innocent explanation of the circumstances known to the police depends on numerous coincidences: among them not only that defendants happened to be at Montez's home to do yardwork when Majares and Montez arrived for the apparent purpose of retrieving drugs they had agreed to sell, but that defendants finished the yardwork at about the same time Majares and Montez arrived; that defendants had some reason unrelated to the drug transaction to come to the house in a minivan registered to Montez and to leave in a different vehicle (which had been parked in Montez's garage); and that the vehicles, although headed for different destinations, traveled about a car-length apart for a considerable distance before being stopped by the police. In contrast, the hypothesis that defendants were involved in a criminal enterprise with Majares and Montez provides a simple unified explanation for all of the observed circumstances.

That defendants were traveling in tandem with Majares and Montez as the latter pair were en route to a drug deal is particularly significant; indeed, that circumstance might be sufficient in itself to establish probable cause for defendants' arrests. In People v. Ortiz, 355 Ill. App. 3d 1056 (2005), a case cited by the State, this court upheld a finding of probable cause to arrest a passenger in a pickup truck that traveled in tandem with a vehicle driven by a suspected drug dealer to a parking lot

where an undercover officer had arranged to buy two kilograms of cocaine. Both defendants stress that, whereas the pickup truck in Ortiz actually traveled to the site of the drug transaction, here both vehicles were stopped miles from the location where the deal was supposed to take place. However, it has been held that "[s]ufficient evidence that two vehicles are traveling in tandem plus evidence that one vehicle contains contraband can provide probable cause sufficient to support arresting the driver of the other vehicle." United States v. Rodriguez-Rodriguez, 550 F.3d 1223, 1228 (10th Cir. 2008). For example, in United States v. Zamudio-Carrillo, 499 F.3d 1206 (10th Cir. 2007), a Kansas highway patrol officer traveling west on an interstate highway observed an eastbound Ford Explorer with what appeared to be a false floor compartment. The Explorer had Arizona specialty license plates. The officer turned across the median into the eastbound lanes. While attempting to catch up with the Explorer, the officer saw a Ford Escape with the same type of Arizona specialty license plate. The officer observed that the Explorer and the Escape had sequential license plate numbers. After confirming that the Explorer had a false floor compartment, the officer stopped the vehicle and arrested the driver. At the officer's request, another officer pulled the Escape over. The defendant--who was driving the Escape--was arrested. Drugs were found in both vehicles. The defendant argued, as defendants do here, that the police lacked probable cause to arrest him. The Zamudio-Carrillo court rejected the argument, reasoning that "the discovery of a false compartment in the Ford Explorer coupled with objective information indicating [that its driver] was traveling in tandem with [the defendant] gave [the arresting officer] probable cause to stop and seize [the defendant]." Zamudio-Carrillo, 499 F.3d at 1209. It was immaterial in Zamudio-Carrillo that the two vehicles were stopped en route and that they theoretically might have had different destinations.

Citing <u>People v. Morquecho</u>, 347 Ill. App. 3d 382 (2004), Cuebas-Barreto suggests that, under the facts here, finding probable cause would be tantamount to guilt by association. In <u>Morquecho</u>, which was decided by a divided panel of this court, the defendant was a passenger in a vehicle driven by a man named Gonzalez, who was the target of an undercover drug investigation. The defendant remained in the vehicle while Gonzalez delivered cocaine to an undercover officer. Both the defendant and Gonzalez were arrested. During a pat-down search, narcotics were discovered in the defendant's sock. The trial court granted the defendant's motion to quash the arrest and suppress evidence. On appeal the State did not argue that there was probable cause to arrest the defendant. Instead, the State argued that the pat-down search was permissible under <u>Terry</u>. The majority rejected the argument, holding that the police exceeded the scope of a permissible search under <u>Terry</u>. The dissent disagreed with this conclusion. Although the dissent concluded only that the seizure of the drugs was permissible under <u>Terry</u> (see <u>Morquecho</u>, 347 Ill. App. 3d at 391 (Gilleran Johnson, J., dissenting)), the majority mistakenly read the dissent as finding that probable cause existed for the defendant's arrest (<u>Morquecho</u>, 347 Ill. App. 3d at 387). The majority remarked that "[t]he dissent determines probable cause existed by transferring to defendant the facts relating to the person who actually committed the sale and delivery of contraband." <u>Morquecho</u>, 347 Ill. App. 3d 387.

While acknowledging that <u>Morquecho</u> is not directly on point, Cuebas-Barreto contends that the same reasoning applies here. However, as the State points out, in <u>Ortiz</u> we noted that the <u>Morquecho</u> majority's references to probable cause are <u>obiter dicta</u>. See <u>Ortiz</u>, 355 Ill. App. 3d at 1071. Moreover, it has been observed that "it is reasonable to infer that if one person in a vehicle is engaged in drug dealing, so are the other passengers, because drug dealing is 'an enterprise to which

a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him.' " <u>United States v. Delossantos</u>, 536 F.3d 155, 159 (2d Cir. 2008), quoting <u>Maryland v. Pringle</u>, 540 U.S. 366, 373, 157 L. Ed. 2d 769, 777, 124 S. Ct. 795, 801 (2003).  Indeed, in <u>Ortiz</u> we stated, "Our decision in <u>Morquecho</u> may have been different had the issue been squarely placed before this court and had the State cited the Supreme Court's holding in <u>Pringle</u> in support of a contention that the police had probable cause to arrest the defendant."  <u>Ortiz</u>, 355 Ill. App. 3d at 1071.

The trial court erred in concluding that probable cause to arrest defendants was lacking. Accordingly we reverse the order granting defendants' motions to quash their arrests and suppress evidence and we remand for further proceedings.

Reversed and remanded.

BOWMAN and O'MALLEY, JJ., concur.