THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHAEL L. HUMPHREY, Defendant-Appellee.

Second District No. 2—03—1306

Opinion filed September 30, 2005.

948

O'MALLEY, P.J., dissenting.

Paul T. Whitcombe, State's Attorney, of Dixon (Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Jack Hildebrand, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The State appeals from the order of the circuit court granting the motion of defendant, Michael Humphrey, to suppress evidence and quash arrest. We affirm.

Defendant was charged with two counts of unlawful possession of methamphetamine manufacturing chemicals (720 ILCS 570/401(a)(6.6)(A), (a)(6.6)(B) (West 2002)). Defendant filed a motion to suppress evidence and quash arrest, which the trial court granted. The State timely filed a notice of appeal and a certificate of impairment, and this appeal followed.

The only witness to testify at the hearing was Trooper Mark Fane of the Illinois State Police, who testified that, on July 22, 2003, he clocked a vehicle traveling at 94 miles per hour in a 65-mile-per-hour zone on Route I-39. As he caught up to the car, he noticed it tailgating another vehicle. He subsequently pulled the car over. As he sat in his squad behind the car, he noticed "a lot of movement" from the passenger of the car. Trooper Fane assumed that the passenger was moving his hands, although he saw only the passenger's shoulders moving. He approached the car on the passenger side and talked to defendant, the driver, through the passenger window. After he asked for defendant's license, Trooper Fane looked down at the passenger-side floorboard and noticed a small, clear plastic container holding several hundred small white tablets partially under the passenger seat and

partially visible at the passenger's feet. He also saw some loose tinfoil like that used to package pills. The passenger did not answer when Trooper Fane asked what the pills were. However, when Trooper Fane asked him to hand over the container, the passenger did so and told Trooper Fane that the pills were pseudoephedrine. Trooper Fane had the passenger get out of the car and asked him what the pills were for. The passenger stated that he had gotten the pills in Wisconsin and was taking them to Missouri to make methamphetamine. Trooper Fane later removed defendant from the car and subsequently found more packages of pills scattered throughout the car. Defendant told Trooper Fane that they were taking the pills to Missouri to sell them to someone to make methamphetamine.

Trooper Fane "had not dealt with" pseudoephedrine before and "didn't know at that point if it was an arrestable offense," so he contacted his supervisor. Trooper Fane had been trained regarding traffic stops involving drugs, but he did not know what the pills were, apart from being told by defendant. He "just knew there was a large amount of them." Based on his experience and training as a police officer, he believed that the pills "could possibly be contraband." At the time he searched the car, he "was not exactly sure what the pills were." He believed that they were pseudoephedrine, based on the passenger's statement. Trooper Fane did not perform any field test on the pills before he arrested defendant, and he was not aware if there was such a test for pseudoephedrine. Trooper Fane believed that the pills could be contraband "due to the amount," which he considered to be "highly unusual."

■ In reviewing a ruling on a motion to suppress, this court may reverse the trial court's findings of historical fact only if they are against the manifest weight of the evidence. *People v. Morquecho*, 347 Ill. App. 3d 382, 386 (2004). However, we review *de novo* the trial court's ultimate conclusion as to the existence of probable cause or reasonable suspicion. *Morquecho*, 347 Ill. App. 3d at 386. The fourth amendment to the United States Constitution protects persons from unreasonable searches and seizures. *People v. Jones*, 215 Ill. 2d 261, 268 (2005). Generally, a search and seizure is reasonable only if the government has first obtained a warrant that authorizes the action. *People v. Rucker*, 294 Ill. App. 3d 218, 223 (1998). The fourth amendment is implicated in a traffic stop because stopping a vehicle and detaining its occupants constitute a seizure within the meaning of the fourth amendment, even if only for a brief period and for a limited purpose. *Jones*, 215 Ill. 2d at 270. A court generally analyzes a fourth amendment challenge to the reasonableness of a traffic stop under the principles of *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868

(1968). *Jones*, 215 Ill. 2d at 270. In such a situation, an officer may, under appropriate circumstances, briefly detain a person for questioning if the officer reasonably believes that the person has committed or is about to commit a crime; however, the investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Jones*, 215 Ill. 2d at 270-71.

■ Clearly, Trooper Fane's initial stop of defendant's vehicle was supported by probable cause, not just a reasonable belief, and was therefore justified. See *Jones*, 215 Ill. 2d at 271. Trooper Fane testified that he clocked defendant's car traveling almost 30 miles per hour over the posted speed limit and observed defendant tailgating another car. When a police officer observes a driver violate a traffic law, the officer is justified in briefly detaining the driver to investigate the violation. *People v. Reatherford*, 345 Ill. App. 3d 327, 335 (2003).

■ However, stopping an automobile for a minor traffic violation does not by itself justify a search of the detainee or his vehicle; the officer must reasonably believe that he is confronting a situation more serious than a routine traffic violation. *Jones*, 215 Ill. 2d at 271. During a *Terry* stop, an officer may seize an object without a warrant, pursuant to the plain view doctrine. This doctrine is an established exception to the prohibition against warrantless searches that allows an officer to seize incriminating evidence that is in plain view. *Rucker*, 294 Ill. App. 3d at 223. This doctrine applies only when the evidence is seized incident to an arrest or is contraband. *Rucker*, 294 Ill. App. 3d at 223. The requirements of the plain view doctrine are: (1) the officer is lawfully in a position from which he can view the object; (2) the officer has a lawful right of access to the object; and (3) the incriminating character of the object is immediately apparent. *Jones*, 215 Ill. 2d at 271-72.

Clearly, criteria (1) and (2) were met here. As we stated above, Trooper Fane's initial stop of defendant's vehicle was supported by probable cause and was justified. Trooper Fane also testified that, after speaking to defendant through the passenger window, he looked down at the passenger-side floorboard and saw the plastic container holding hundreds of pills partially visible at the passenger's feet. Thus, the traffic stop, and Trooper Fane's approach to the vehicle to speak to defendant, involved no fourth amendment violation, and the uncontroverted evidence showed that Trooper Fane could plainly see the container of pills on the floorboard.

■ However, we conclude that criterion (3) was not fulfilled, because the incriminating nature of the container of pills was not immediately apparent. Trooper Fane testified that, based on his training, he believed that the pills "could possibly be contraband," but this was

"due to the amount" of pills. He did not know what the pills were, apart from being told, after he saw them and was handed the container, that they were pseudoephedrine. He was not sure, even after searching the car, if possession of the pills was an arrestable offense. This evidence does not demonstrate the immediately apparent incriminating character envisioned in the plain view doctrine. If an officer lacks probable cause to believe that an object in plain view is contraband without conducting some further search of the object, *i.e.*, if the incriminating character of the object is not immediately apparent, the plain view doctrine cannot justify the seizure. *Minnesota v. Dickerson*, 508 U.S. 366, 374-75, 124 L. Ed. 2d 334, 345, 113 S. Ct. 2130, 2136-37 (1993); *Jones*, 215 Ill. 2d at 272. Such a conclusion does not, as the State argues, create a requirement of near certainty on the part of an officer. The "immediately apparent" or "probable cause" element does not require that an officer "know" that the item he sees is contraband or evidence of a crime; there need be only sufficient evidence to justify the reasonable belief that the defendant has committed or is committing a crime. *Jones*, 215 Ill. 2d at 273-74. However, the reasonable belief necessary to justify a seizure is the same that would justify a finding of probable cause. *People v. Haycraft*, 349 Ill. App. 3d 416, 424 (2004). Here, there is no probable cause. Viewing something without understanding what one is viewing, even requiring an explanation of what one is viewing, is not plain view. It is no less "assisted view" than if Trooper Fane asked defendant to move the contents of the car around so that he could get a better view of everything.

The State bases much of its argument on *Reatherford*, but that case is easily distinguished. In *Reatherford*, the State presented testimony that the State Police received a tip from a security officer at a Wal-Mart store that the defendant and another man, both of whom were known to the officer, had purchased Sudafed and Coleman fuel, ingredients used in the manufacture of methamphetamine. The tipster also provided a description of the defendant's truck, the license plate, and the direction in which the truck was headed. Troopers found the defendant's truck and pulled it over after observing two lane violations. One trooper, Master Sergeant Todd Kilby, saw Coleman fuel and lithium batteries behind the seat in the truck. Kilby asked the passenger to exit the vehicle and began questioning him. The passenger appeared nervous and gave deceptive answers. Based on his observations, the deceptive answers, the items seen in the truck, and the tip that had been received, Kilby had the defendant removed from the truck and placed into custody. *Reatherford*, 345 Ill. App. 3d at 332. A subsequent search of the truck revealed over 1,100 pseudoephedrine

pills. The trial court denied the defendant's motion to suppress. *Reatherford*, 345 Ill. App. 3d at 332.

The facts in *Reatherford* did not lead to an analysis under the plain view doctrine, for the simple reason that the contraband in that case was not in plain view. The pills were not found until after the troopers had questioned the suspects, removed them from the truck, and searched the truck. Instead, the troopers in *Reatherford* had a tip that the contraband was in the truck before they performed the traffic stop. The tip was partially verified by the items Kilby saw behind the seat. See *Reatherford*, 345 Ill. App. 3d at 337. The court concluded that, based on the verified tip and the observation of the other items in the truck, the troopers "had a reasonable, articulable suspicion that criminal activity was taking place." *Reatherford*, 345 Ill. App. 3d at 337.

We find the situation in *Jones* to be more on point and pertinent. In *Jones*, the officer initiated a traffic stop after noticing that the defendant's taillights were not working. As the defendant handed over his driver's license, the officer noticed a small wooden box in the defendant's shirt pocket. The officer either asked for the box or took it from the defendant's pocket and found a smoking pipe and marijuana inside. After removing the defendant from his car, the officer searched the car and found handguns and ammunition. *Jones*, 215 Ill. 2d at 265.

Our supreme court applied a plain view analysis to the officer's seizure of the wooden box. The court found that the officer "had probable cause to seize and search the box" (*Jones*, 215 Ill. 2d at 273), given the officer's training and experience, including at least 24 prior encounters with "one-hitter" boxes such as that seized in the case (see *Jones*, 215 Ill. 2d at 274-76).

The dissent argues for a practical, nontechnical definition of probable cause, quoting *Texas v. Brown*, 460 U.S. 730, 741, 75 L. Ed. 2d 502, 514, 103 S. Ct. 1535, 1543 (1983), for the proposition that probable cause " 'merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," [citation], that certain items may be contraband' " and that " 'it does not demand any showing that such a belief be correct or more likely true than false.' " 361 Ill. App. 3d at 960. We have no argument with this principle. Had Trooper Fane viewed in plain sight a bag of green, leafy substance in the car and seized it, thereby revealing an illegal loaded gun beneath it, the gun would not be suppressed if the leafy substance turned out to be oregano instead of marijuana. However, if Trooper Fane did not know if any green, leafy substances were illegal and was simply interested because there was a lot of it there, it is not practical, either technically or nontechnically, for him to seize it.

The dissent would do well to cite to some authority actually involving the relationship of probable cause to the plain view doctrine instead of citing to sources speaking generally about probable cause. Indeed, the dissent fails to address the "immediately apparent" requirement other than to quote from *Brown* for the proposition that the choice of that phrase was an unhappy one, leading to the requirement of an unduly high degree of certainty of the incriminating character of evidence seized under the plain view doctrine. 361 Ill. App. 3d at 960. Whatever the emotional makeup of that choice, it is still the standard used by the United States Supreme Court and the supreme court of our state. This court is not in a position to adopt a lower standard, no matter how some of us feel about the rulings of those higher courts. See *People v. Denson*, 139 Ill. App. 3d 914, 926 (1985).

■ The dissent also attempts to avoid the application of the plain view doctrine by arguing that Trooper Fane's procurement of the container of pills was not a seizure, because Trooper Fane requested, rather than ordered, that defendant's passenger hand it over. Professor LaFave, in concluding that, "in the main," the word "seizure" has not been a source of difficulty, defines "seizure" as an " 'act of physically taking and removing tangible personal property' " or " 'some meaningful interference with an individual's possessory interests' " in a piece of property. 1 W. LaFave, Search & Seizure § 2.1(a), at 423 (4th ed. 2004), quoting 68 Am. Jur. 2d *Searches & Seizures* § 8 (1973), and *United States v. Jacobsen*, 466 U.S. 109, 113, 80 L. Ed. 2d 85, 94, 104 S. Ct. 1652, 1656 (1984). Professor LaFave makes no distinction between taking property after asking for it and taking property after demanding it, and neither does our supreme court. In *Jones*, there was conflicting testimony as to whether the officer asked for or simply took the box from the defendant. *Jones*, 215 Ill. 2d at 264. Our supreme court, without distinguishing between the two methods of obtaining the box, characterized the procurement of the box as a seizure. See *Jones*, 215 Ill. 2d at 271-82. The finding of a seizure is not predicated on whether the officer speaks in the passive or the affirmative.

Even so, the dissent's hairsplitting between "requesting" and "ordering" is unavailing. For example, in *People v. Synnott*, 349 Ill. App. 3d 223 (2004), a police officer stopped the defendant's car for speeding. In talking to the defendant, the officer: (1) *"asked* defendant to step out of the car"; (2) told the defendant, " 'I *need* you to step out of the car' "; (3) "advised defendant that he had a right to *ask* him to step out of the car and that defendant had *no right to refuse*"; and (4) *"asked* defendant to step out of the vehicle and warned him that if he

refused he would be arrested for obstructing a police officer."
(Emphasis added.) *Synnott*, 349 Ill. App. 3d at 224. The defendant did
not leave the car until the officer grabbed him by the arm. This court,
Presiding Justice O'Malley writing, found meritless the defendant's
argument that the officer did not order him to exit the car, but merely
requested that he do so:

> "The arresting officer did not merely ask defendant to step out of
> the car. He told defendant that he 'needed' him to step out of the
> car, that defendant had no right to refuse the *request*, and that
> defendant would be arrested for obstructing a peace officer if he
> did not comply." (Emphasis added.) *Synnott*, 349 Ill. App. 3d at
> 229.

The officer made a request the defendant could not refuse.

In *Morquecho*, two officers were assigned to arrest the passenger
in an automobile after the completion of an undercover drug buy. According to the testimony of the arresting officers:

> "[Officer] Ackland went to the passenger side of the car with his
> gun drawn and 'asked' defendant to get out of the car. When
> defendant got out of the car 'on his own free will,' Ackland placed
> him on his stomach and handcuffed him. ***
>
>             * * *
>
> *** After the arrest signal was given, [Deputy] DeCamp and Ackland opened the passenger door of the Mustang and 'asked'
> defendant to get out of the car. When defendant was partially out
> of the car, they grabbed him by the arm and 'ask[ed] him to get
> onto the ground.' " *Morquecho*, 347 Ill. App. 3d at 384-85.

While neither *Synnott* nor *Morquecho* involved a question of whether
the defendant or his property was "seized," they demonstrate that
words such as "ask," "request," and "demand" need to be looked at
in the context of the circumstances involved; being "asked" at
gunpoint to get out of a car and "asked" to get on the ground as you
are grabbed by the arm does not leave much room for voluntary
compliance.

The dissent's reliance on *People v. Gonzalez*, 204 Ill. 2d 220 (2003),
and *People v. Murray*, 137 Ill. 2d 382 (1990), is misplaced; neither case
even involved a question about the seizure of property. *Gonzalez*
involved an officer's request for identification from a passenger in an
automobile lawfully stopped for a traffic violation, and *Murray*
involved the question of whether the occupant of a parked car was
seized when officers knocked on his window, either asked or told him
to get out of the car, and asked for his license. *Murray*, 137 Ill. 2d at
384-85. The only tangible personal property involved in these cases
was the form of identification (a traffic ticket in *Gonzalez* and a license
in *Murray*), and there was no argument in either case about the offic-

ers' physically taking or interfering with the defendants' possessory interests in these documents.

In this case, Trooper Fane had at best a healthy suspicion that the container of pills "could possibly be contraband." Trooper Fane's testimony had none of the indicia of training, experience, or even knowledge of the law that was evident in *Jones*. Without more, we would reduce the requirement that the incriminating character of the evidence must be immediately apparent to a requirement that the character of the evidence must pique the officer's interest to inquire further. This we will not do.

For these reasons, the judgment of the circuit court of Lee County is affirmed.

Affirmed.

HUTCHINSON, J., concurs.

PRESIDING JUSTICE O'MALLEY, dissenting:

Two men are in a car hurtling along at 94 miles per hour with literally hundreds of pills (ironically, the pills are the key ingredient for an illegal drug known as "speed") sitting in a Tupperware bowl at the passenger's feet. A state trooper stops the speeding car and asks the passenger to hand him the pills. Thereafter, the passenger tells the trooper that he and defendant are on their way to Missouri to manufacture methamphetamine. The majority holds that the foregoing constitutes an illegal seizure under the plain view doctrine.

I disagree. The plain view doctrine delimits the circumstances under which police may rightfully *seize* an object (see *People v. Haycraft*, 349 Ill. App. 3d 416, 423-24 (2004)), but Trooper Fane's procurement of the pills from the passenger was not a seizure. The trial court's own factual findings defy its holding that a seizure occurred. Trooper Fane testified: "I asked him [the passenger] to hand [the pills] to me, which [the passenger] did." The trial court accurately described this action as a "request," but proceeded, inexplicably, to find that the request effected a seizure:

> "Trooper Fane *** *requested* the container; *seizing* the property of the defendant. At the *request* of the officer, the passenger handed the container to the trooper." (Emphasis added.)

A request, without more, does not give rise to a seizure. See, *e.g.*, *Gonzalez*, 204 Ill. 2d at 236 ("A simple request for identification is facially innocuous. It does not suggest official interrogation and is not the type of question or request that would increase the confrontational nature of the encounter"); *People v. Murray*, 137 Ill. 2d 382, 393 (1990)

(request for defendant to exit the car and produce identification was not a seizure). In *Murray*, our supreme court set forth several factors to guide a court in determining whether a seizure occurred: (1) the threatening presence of several officers, (2) the display of a weapon by an officer, (3) some physical touching of the person of the citizen, and (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Murray*, 137 Ill. 2d at 390. " 'In the absence of some such evidence,' " explained the court, " 'otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.' " *Murray*, 137 Ill. 2d at 390-91, quoting *United States v. Mendenhall*, 446 U.S. 544, 555, 64 L. Ed. 2d 497, 509-10, 100 S. Ct. 1870, 1877 (1980). The trial court identified no coercive circumstances that could have elevated Trooper Fane's request to the status of a demand. No deference is owed a factual finding "where an opposite conclusion is clearly evident from the record" (*People v. Rockey*, 322 Ill. App. 3d 832, 836 (2001)), as is the case here with the trial court's finding of a seizure.

The majority has several responses to this point. First, I am charged with "hairsplitting" for stressing the difference between a request and a demand. However, the distinction has served as the basis for deciding so many cases that it seems odd to dismiss it with a pejorative label. See, *e.g., Murray*, 137 Ill. 2d at 393 ("The encounter may be characterized as a seizure if the officer orders, rather than requests, that the occupant open the door or exit the car"); *People v. Cole*, 256 Ill. App. 3d 590, 595 (1994) (where the officer's request that defendant produce his driver's license was made without an imperious tone of voice or show of authority, there was no seizure); *People v. Clark*, 185 Ill. App. 3d 231, 236-37 (1989) (bare request that defendant roll down window of car in which he was sitting did not effect a seizure). The distinction has been repeatedly recognized not only by the courts of this state but by the United States Supreme Court as well. Summarizing its holdings in cases involving police questioning of individuals passing through airport terminals, the Supreme Court said:

> "We have stated that even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual [citations]; ask to examine the individual's identification [citations]; and request consent to search his or her luggage [citation]—as long as the police do not convey a message that compliance with their requests is required." *Florida v. Bostick*, 501 U.S. 429, 434-35, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991).

See also *Florida v. Royer*, 460 U.S. 491, 501, 75 L. Ed. 2d 229, 238-39, 103 S. Ct. 1319, 1326 (1983) (plurality opinion) (defendant seized when detectives approached him in airport, announced they suspected him of carrying drugs, and asked him to accompany them to a nearby room where he agreed to a search of his luggage. "[I]f the events in this case amounted to no more than a permissible police encounter in a public place or a justifiable *Terry*-type detention, [the defendant's] consent, if voluntary, would have been effective to legalize the search of his two suitcases"). If police need not have any justification for merely requesting consent to search personal property, as *Bostick* holds, then of course they need not justify a request that the individual hand them the property, as happened here. The greater includes the lesser.

Continuing with this theme, the majority attempts to distinguish *Murray* and *Gonzalez* on the ground that "neither case even involved a question about the seizure of property"—that both cases dealt with requests for forms of identification. 361 Ill. App. 3d at 954. The defendant in *Murray*, however, was asked not only to produce identification but to step out of the car as well. The supreme court did not find the request distinct for being double-pronged, but simply determined whether the request amounted to a seizure. That is what we ought to be doing here.

The majority also cites two cases, *People v. Synnott*, 349 Ill. App. 3d 223 (2004), and *People v. Morquecho*, 347 Ill. App. 3d 382 (2004), where the officers' requests were accompanied by coercive action, *viz.*, a drawn gun or physical force. The point of these cases, says the majority, is that terms such as "ask, "request," and "demand" are not dispositive. I enthusiastically agree. Our supreme court has provided a list of factors for courts to apply in determining whether a police officer's "request" in reality effected a seizure. See *Murray*, 137 Ill. 2d at 390. Oddly, though it labors at length to explain why labels are not conclusive in light of *Synnott* and *Morquecho*, the majority devotes not one spot of ink to explaining why it believes the label of "request" does not fit here given the totality of the circumstances.

Interestingly, the "hairsplitting" request/demand distinction that I am urging today is the same distinction I urged in my dissent from the decision in *People v. Gonzalez*, 324 Ill. App. 3d 15, 24-26 (2001) (O'Malley, J., dissenting), and this same "hairsplitting" distinction was the supreme court's basis for reversal. See *Gonzalez*, 204 Ill. 2d at 236 (rejecting appellate court's conclusion that officer's bare request for identification constituted coercion). The majority's statement that "the finding of a seizure is not predicated on whether the officer speaks in the passive or the affirmative" (361 Ill. App. 3d at 953) is

directly at odds with the law. It is regretful that a past error of this district is today repeated, and so soon after an unequivocal correction by our highest court.

The majority, however, is convinced that it is not defying our supreme court by disregarding the request/demand distinction. According to the majority, the long life that the distinction has enjoyed in Illinois came to a silent and abrupt end recently—obliterated implicitly by our supreme court in *People v. Jones*, 215 Ill. 2d 261 (2005). In *Jones*, the officer and the defendant gave conflicting testimony over whether the officer requested or demanded that the defendant give the officer what he suspected was a "one-hitter" box in the defendant's possession following a traffic stop. *Jones*, 215 Ill. 2d at 264. The supreme court applied a plain view analysis without resolving the inconsistency. *Jones*, 215 Ill. 2d at 271-73. The majority interprets the silence as an implied dismissal of the relevancy of the request/demand distinction. That conclusion is hasty. The supreme court had just recognized the request/demand distinction in *Gonzalez*. It is possible that the court believed that the request/demand distinction pertains to a *Gonzalez*-type scenario, where the police asked for a form of identification for investigatory purposes, but not to occasions where the police procure personal property for the purpose of determining whether it itself is contraband. Possible, I think, but by no means likely. The United States Supreme Court held in *Bostick* that a mere request to search an individual's personal property (*i.e.*, luggage) does not require justification. *A fortiori*, a mere request that the individual hand over the property does not require justification. Our supreme court stays in lockstep with the United States Supreme Court's holdings in search and seizure law. See *People v. Lampitok*, 207 Ill. 2d 231, 240-41 (2003). If the court intended in *Jones* to depart from federal case law, it would not have done so *sub silentio*. There are better explanations for the silence in *Jones*. The State may have failed to raise the issue of whether the officer requested or demanded that the defendant hand over the "one-hitter." Perhaps the State raised the argument but the court failed to acknowledge it. The court might have found, but neglected to state, that a seizure occurred (based on the totality of the circumstances), or the court might simply have assumed *arguendo* that a seizure occurred. These are plausible readings, unlike the majority's, which requires one to assume that *Jones* departed from firmly established case law without telling us.

Having found no case law to support its position, the majority turns to Professor Wayne LaFave's renowned treatise on the fourth amendment. At the start of the first volume, LaFave provides two definitions of "seizure" that the majority finds significant for not

distinguishing between property that is relinquished under force, threat of force, or show of authority, and that which is relinquished voluntarily. See 1 W. LaFave, Search & Seizure § 2.1(a), at 423 (4th ed. 2004). LaFave defines a "seizure" as the " 'act of physically taking and removing tangible personal property,' " and, alternatively, as " 'some meaningful interference with an individual's possessory interests in *** property.' " 1 W. LaFave, Search & Seizure § 2.1(a), at 423 (4th ed. 2004), quoting 68 Am. Jur. 2d *Searches & Seizures* § 8 (1973), and *United States v. Jacobsen*, 466 U.S. 109, 113, 80 L. Ed. 2d 85, 94, 104 S. Ct. 1652, 1656 (1984). LaFave draws the first definition from a prior, out-of-print edition of American Jurisprudence. He does not identify what source the treatise itself used for that definition. Nor does the majority. Though LaFave is learned, his pronouncements are not themselves the law. The second definition comes from the United States Supreme Court. See, *e.g.*, *Maryland v. Macon*, 472 U.S. 463, 469, 86 L. Ed. 2d 370, 376-77, 105 S. Ct. 2778, 2782 (1985); *Jacobsen*, 466 U.S. at 113, 80 L. Ed. 2d at 94, 104 S. Ct. at 1656. What the Supreme Court has said in *Macon* and elsewhere leaves no doubt that it does not share the majority's view on this issue. There is no seizure where the defendant *"voluntarily transfer[s]* any possessory interest he may have had in the [property]" to the police. (Emphasis added.) *Macon*, 472 U.S. at 469, 86 L. Ed. 2d at 377, 105 S. Ct. at 2782. "[A] seizure contemplates a *forcible* dispossession of the owner." (Emphasis added.) *Hale v. Henkel*, 201 U.S. 43, 76, 50 L. Ed. 652, 666, 26 S. Ct. 370, 379 (1906). Illinois law is in complete accord:

> " 'A "search" is a probing or exploration for something that is concealed or hidden from the searcher. A "seizure" is a forcible or secretive dispossession of something against the will of the possessor-owner, both terms connoting hostility between the searcher and the person whose property or possession are being searched or sought.' " *People v. Sanders*, 44 Ill. App. 3d 510, 516 n.1 (1976), quoting *People v. Carroll*, 12 Ill. App. 3d 869, 875 (1973).

In the final analysis, however, this is not a semantic dispute about the definition of "seizure." Even if a voluntary relinquishment of property may properly be called a "seizure," it is still not subject to constitutional scrutiny, according to the principle of consent. "A voluntary consent to an otherwise unreasonable search and seizure waives the constitutional privilege and the evidence derived therefrom is admissible at trial." *People v. Devine*, 98 Ill. App. 3d 914, 922 (1981). I cannot determine why the majority completely disregards this aspect of fourth amendment law.

If Trooper Fane's request for the pills was indeed a seizure, justification was supplied by the plain view doctrine. In *Coolidge v.*

*New Hampshire*, 403 U.S. 443, 466, 29 L. Ed. 2d 564, 583, 91 S. Ct. 2022, 2038 (1971), the United States Supreme Court held that police may seize an object lying in plain view if its incriminating character is "immediately apparent." In *Texas v. Brown*, 460 U.S. 730, 741, 75 L. Ed. 2d 502, 513, 103 S. Ct. 1535, 1543 (1983), a plurality of the Court wrote:

> "Decisions by this Court since *Coolidge* indicate that the use of the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine."

The plurality went on to state that a seizure under the plain view doctrine is presumptively reasonable if there is probable cause to associate the item with criminal activity. *Brown*, 460 U.S. at 741-42, 75 L. Ed. 2d at 513, 103 S. Ct. at 1543. "Probable cause," the plurality wrote,

> "is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' [citation], that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required. *Brinegar v. United States*, 338 U.S. 160, 176[, 93 L. Ed. 1879, 1891, 69 S. Ct. 1302, 1311] (1949)." *Brown*, 460 U.S. at 742, 75 L. Ed. 2d at 514, 103 S. Ct. at 1543.

This practical, commonsense standard was satisfied here. After he pulled the vehicle over, Trooper Fane observed the passenger "hunch over," and he saw "a lot of hand movement." Trooper Fane considered these movements "unusual." See *People v. Moore*, 341 Ill. App. 3d 804, 811 (2003) (furtive movements of car occupants were a pertinent factor in determining whether reasonable and articulable suspicion existed to request permission to search a *Terry*-stopped vehicle). When Trooper Fane approached the car, he observed the pills on the passenger-side floor. The appearance of the pills was itself revealing, for they were removed from their original packaging and kept by the hundreds in a plastic container. The sheer quantity of the pills, and the manner in which they were stored, made it unlikely that they were intended for legal use. See *People v. Schaefer*, 133 Ill. App. 3d 697, 702 (1985) (quantity and manner of storing pills may be indicia of criminality). Additionally, the pills were situated in the very area toward which the passenger apparently was reaching when he was suspiciously hunched over. Of course, despite all this, there remained a possibility that the pills were legal. However, there was also a pos-

sibility that the small wooden box in *Jones* was not drug-oriented and contained no contraband, yet our supreme court held that the officer was justified in seizing the box under the plain view doctrine even though his suspicion of illegality "was not absolutely guaranteed to be correct" (*Jones*, 215 Ill. 2d at 278). I do not see much of the practical or the nontechnical in the majority's refusal to apprehend that a reasonable officer could believe that the pills, removed as they were from their original packaging and packed into a Tupperware container, might be contraband.

The majority insists that *Jones* is distinguishable because Trooper Fane's testimony "had none of the indicia of training, experience, or even knowledge of the law" possessed by the officer in *Jones*. 361 Ill. App. 3d at 955. The majority illustrates its point with a hypothetical, noting that if Trooper Fane had seen a bag of green, leafy substance in the car but "did not know if any green, leafy substances were illegal and was simply interested \*\*\*, it is not practical, either technically or nontechnically, for him to seize it." 361 Ill. App. 3d at 952. The last clause is somewhat puzzling; I presume the majority means to say that Trooper Fane's seizure of the green, leafy substance would be unconstitutional, not somehow impractical, if he did not know there exists an illegal green, leafy substance. In any event, the hypothetical serves only to underscore the majority's egregious error.

The majority believes that Trooper Fane could not lawfully seize the green, leafy substance if he failed to recognize it as having the physical characteristics of contraband. Such a view is patently at odds with the law. The majority, amazingly, does not understand the difference between objective and subjective, and that distinction is fundamental to search and seizure law. The legality of Trooper Fane's hypothetical seizure of the green, leafy substance would not depend on his "knowing" or even suspecting that there exists an illegal green, leafy substance. Similarly, Trooper Fane did not need to have any particular degree of confidence that the pills he procured in the present case were contraband. In fact, a seizure would still have been legal even if Trooper Fane did not harbor the slightest inkling that the pills were illegal but instead obtained them for some other reason. LaFave describes the proper approach:

> "This test, as is the case with the legal standard for arrest, is *purely* objective and thus there is no requirement that an actual suspicion by the officer be shown. Moreover, as again is the case with respect to arrest, the objective grounds as to one offense are not defeated because the officer either thought or stated that he was acting with regard to some other offense or on some other basis entirely." (Emphasis in original.) 4 W. LaFave, Search & Seizure § 9.5(a), at 472-73 (4th ed. 2004).

Illinois law holds precisely the same:

"Just as a court may overrule an officer's determination of probable cause even when made in good faith, a court may also find probable cause in spite of an officer's judgment that none exists. An objective test applies. The subjective intentions or beliefs of the officer are not dispositive." *People v. Gray*, 305 Ill. App. 3d 835, 839 (1999).

"The facts should not be viewed with analytical hindsight, but instead should be considered from the perspective of a reasonable officer at the time that the situation confronted him or her." *People v. Thomas*, 198 Ill. 2d 103, 110 (2001). But we need not take our own courts' word for it. The United States Supreme Court, when asked to interpret the fourth amendment as barring pretextual traffic stops, held that the subjective beliefs of the officer are irrelevant to determining whether there was justification for a traffic stop. See *Whren v. United States*, 517 U.S. 806, 813, 135 L. Ed. 2d 89, 97-98, 116 S. Ct. 1769, 1774 (1996). "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813, 135 L. Ed. 2d at 98, 116 S. Ct. at 1774. " '[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.' " *Whren*, 517 U.S. at 813, 135 L. Ed. 2d at 98, 116 S. Ct. at 1774, quoting *Scott v. United States*, 436 U.S. 128, 138, 56 L. Ed. 2d 168, 178, 98 S. Ct. 1717, 1723 (1978). Significantly, *Scott* dealt with the legality of a wiretap, and thus the objectivity principle articulated in *Whren* does not apply only to traffic stops. In fact, it applies to hypotheticals regarding green, leafy substances.

The majority would have the lawfulness of a seizure turn on the particular attributes of the seizing officer. In the majority's vision of the law, because the officer in *Jones* had more "knowledge of the law," more law enforcement experience, was more confident in his beliefs, and gave more articulate testimony than did Trooper Fane, the officer in *Jones* satisfied the fourth amendment but Trooper Fane violated it. But the rights of individuals against unreasonable searches and seizures do not fluctuate with the characteristics of the officers they encounter. *Cf. Whren*, 517 U.S. at 813, 135 L. Ed. 2d at 98, 116 S. Ct. at 1774 (rejecting suggestion that reasonableness of traffic stop should depend on whether it is consistent with local police practices: "We cannot accept that the search and seizure protections of the Fourth Amendment are so variable [citations] ***"). The obvious, but ironic, problem here is not with the training, experience, and "knowledge of the law" of Trooper Fane, but rather with the training, experience,

and "knowledge of the law" of the majority, which, as noted, simply does not understand the difference between the subjective and the objective. *Jones*, the majority's main source of authority, does not support the majority's confused approach despite whatever subjectivism the majority might read into the supreme court's statement that, "in deciding whether probable cause exists, a law enforcement officer may rely on training and experience to draw inferences and make deductions that might well elude an untrained person." *Jones*, 215 Ill. 2d at 274. *Jones* cites as authority for this statement a United States Supreme Court case, *Ornelas v. United States*, 517 U.S. 690, 134 L. Ed. 2d 911, 116 S. Ct. 1657 (1996). *Ornelas* makes it clear that the existence of probable cause is a question not of what the officer, possessed of his own peculiar skills and experience, might have believed, but of "whether [the] historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to *** probable cause." *Ornelas*, 517 U.S. at 696, 134 L. Ed. 2d at 919, 116 S. Ct. at 1661-62. This is the constancy by which our fourth amendment attempts to achieve consistency. The majority's approach, by contrast, is blatantly contrary to a rule of law so firmly established as to be nearly boilerplate. Tellingly, the majority chooses not to respond to my points here regarding the subjective/objective distinction. As long as the majority remains ignorant of such a basic concept of search and seizure law, it is doomed to keep repeating such basic and obvious errors.

Here, a reasonable officer in Trooper Fane's position would have believed that the pills were possibly contraband, and that should suffice for our purposes here.