# Illinois Official Reports

## Appellate Court

---

### *People v. Lee*, 2018 IL App (3d) 160100

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALFRED G. LEE, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0100 |
| Filed | August 1, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Whiteseide County, No. 15-CF-62; the Hon. Stanley B. Steines, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and Sean Conley, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Terry Costello, State's Attorney, of Morrison (Patrick Delfino, Lawrence M. Bauer, and Diane L. Campbell, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court.<br>Justice Holdridge specially concurred, with opinion.<br>Justice O'Brien specially concurred, with opinion. |

**OPINION**

¶ 1       On February 24, 2015, the State charged defendant, Alfred G. Lee, by information with knowingly possessing more than 15, but less than 100, grams of a substance that contained cocaine. Police seized the substance from defendant's home while executing a search warrant in an unrelated criminal investigation. Defendant's pretrial motion to suppress argued that the substance was the fruit of an improper search because it was outside the warrant's scope and not in plain view. The trial court denied the motion. A jury convicted defendant; he now appeals the conviction. He claims that trial counsel provided ineffective assistance by making a frivolous legal argument in support of the motion to suppress; counsel also failed to renew the motion after the officer who found the contraband testified at a subsequent compulsory joinder hearing. Defendant does not challenge his sentence or the trial court's rulings on his motion to suppress and compulsory joinder motion. We affirm defendant's conviction.

¶ 2                                           BACKGROUND

¶ 3       In October 2014, Sterling police investigated defendant's involvement in a shooting. A witness identified defendant as the shooter. Police obtained a warrant to search defendant's home for evidence related to the shooting. Several law enforcement officers executed the warrant on October 19, 2014. Detective Alex Chavira found the substance under defendant's bed sheets. After the State charged defendant, defense counsel filed a motion to suppress the cocaine substance at issue. Defendant's motion argued that the substance fell outside of the warrant's scope and was not in plain view; police could not expect to find evidence related to the shooting under defendant's bed sheets.

¶ 4       The trial court heard the motion to suppress on April 28, 2015. Chavira testified that he obtained the search warrant and assisted in its execution. After he pulled back defendant's bed sheets, Chavira found knotted, plastic bags that contained a brown, powdery substance. The bags were concealed in a larger plastic bag. In Chavira's experience, this packaging method suggested that the bags contained illicit drugs. He believed that the substance was either heroin or a "bad batch" of cocaine. The court denied defendant's motion to suppress. It concluded that Chavira and the other officers lawfully accessed the location where Chavira found the substance; they saw the substance in plain view while conducting a legal search.

¶ 5       On August 4, 2015, defense counsel filed a motion to dismiss. The motion alleged a speedy trial violation premised on compulsory joinder. Counsel filed a compulsory joinder motion on September 22. It claimed that the State failed to try defendant's drug case within the statutory period (725 ILCS 5/103-5 (West 2016)), which began immediately after police executed the search warrant. Counsel argued that compulsory joinder principles required the State to file the drug charges and join them with the shooting charges immediately after police seized the cocaine substance in October 2014. Instead, the State filed the drug charges after the crime lab confirmed that the substance contained cocaine in February 2015.

¶ 6       Detective Chavira testified at the compulsory joinder hearing on October 6, 2015. For the most part, he restated his previous testimony. However, he added that he had "no idea" what the plastic bags contained when he discovered them during the search. He believed the substance looked like oatmeal. He did not conduct a field test. He did not list the substance as "suspected contraband" in the inventory record from the search. Chavira never knew the substance contained illicit drugs until the crime lab returned its test results in February 2015.

¶ 7    The court denied defendant's speedy trial and compulsory joinder motions. The court stated:

> "I think too that because of the unknown substance, the State did not have charges they could file [when police seized the substance] *** it is fair not only to the State but also to any defendant that the State not file any charges until they know *** that that substance is contraband."

Neither the State nor police knew the substance's composition until the crime lab tested it and returned the results several months after Chavira seized it. The court also noted that "even if joinder were applicable, we know that it would be prejudicial to the Defendant to try these two cases together" because the shooting and drug charges were unrelated.

¶ 8    Defendant's trial began on October 13, 2015. The substance and the crime lab's test results served as the State's primary evidence. The jury convicted defendant. The court entered the conviction and sentenced him to six years in prison. On December 11, defense counsel filed a motion for a new trial, which renewed the compulsory joinder issue and argued that the State failed to prove defendant guilty beyond a reasonable doubt. The court denied the motion. This appeal followed.

¶ 9                                    ANALYSIS

¶ 10    Defendant asserts that trial counsel provided ineffective assistance by failing to renew the motion to suppress after Detective Chavira testified at the compulsory joinder hearing. He also claims that counsel made a frivolous argument that the *search* exceeded the warrant's scope in the motion to suppress; the seizure was improper, not the search. According to defendant, counsel should have renewed the motion after Chavira testified that he could not initially identify the substance with certainty; this testimony rendered the seizure improper. Because counsel failed to renew the motion to suppress, defendant cannot use Chavira's testimony at the compulsory joinder hearing to appeal the trial court's earlier suppression order. See *People v. Brooks*, 187 Ill. 2d 91, 127-28 (1999).

¶ 11    We review ineffective assistance claims under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The "performance prong" requires defendants to show that counsel performed deficiently under prevailing professional norms. *Id.* at 687-88. The "prejudice prong" requires defendants to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* Even if we assumed, *arguendo*, that defendant satisfied the performance prong, we would nonetheless affirm his conviction because he cannot demonstrate the requisite prejudice.

¶ 12    The thrust of defendant's prejudice argument is that the State could not have admitted the substance as evidence at trial if counsel argued that Detective Chavira's seizure was unconstitutional: "With the cocaine suppressed, the State would have been unable to continue the prosecution." Although this statement may be true based on this case's facts, it assumes that "the trial court would have had no choice but to suppress the cocaine" if counsel made the seizure argument instead of the search argument. We disagree with defendant's assumption.

¶ 13    In *Horton v. California*, 496 U.S. 128, 136-37 (1990), the Supreme Court officially adopted a long-recognized standard that, for police to properly seize evidence in plain view,

- 3 -

its "incriminating character" must be immediately apparent. Defendant claims that the substance's incriminating character was not immediately apparent because Detective Chavira admittedly did not *know* that the substance contained cocaine. In fact, he testified at the compulsory joinder hearing that the substance looked like oatmeal.

¶ 14    Defendant relies heavily on *People v. Humphrey*, 361 Ill. App. 3d 947 (2005), where a police officer stopped a motorist for speeding. During the stop, the officer noticed a container holding hundreds of pills near the passenger's feet. The officer seized the pills. He later testified that the amount of pills in the container made him believe that they were contraband. It turned out that the pills contained pseudoephedrine; the State charged defendant with unlawful possession of methamphetamine manufacturing chemicals. However, the court held that the officer improperly seized the pills because he did not know that they contained pseudoephedrine or whether possessing the pills constituted a crime. *Id.* at 950-51.

¶ 15    We reject defendant's position that *Humphrey* should influence our decision in this case. The opinion of one appellate court district, division, or panel is not binding on others. *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008). The *Humphrey* majority seems to support defendant's position that "immediately apparent" means that a law enforcement officer must immediately *know* an item is evidence of a crime. That is not the proper standard. To the extent that the *Humphrey* court held that it is, we decline to follow the court's holding

¶ 16    The Supreme Court has described "immediately apparent" as "an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary." *Texas v. Brown*, 460 U.S. 730, 741 (1983). Essentially, the "immediately apparent" element hinges on a probable cause determination; it does not require a law enforcement officer to *know* that an item is contraband or evidence of a crime. *People v. Jones*, 215 Ill. 2d 261, 277 (2005).

¶ 17    Probable cause " 'is not a high bar.' " *District of Columbia v. Wesby*, 583 U.S. ___, ___, 138 S. Ct. 577, 586 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, ___, 134 S. Ct. 1090, 1103 (2014)). It exists if, from the standpoint of an objectively reasonable officer, the items or events at issue create a reasonable probability that defendant committed or is committing a crime. See *id.* at ___ n.2, 138 S. Ct. at 584 n.2; *Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003); *Jones*, 215 Ill. 2d at 277. It is an objective, not subjective, test.

¶ 18    Defendant conjures a far-fetched story in an attempt to portray Detective Chavira's seizure as unreasonable. He claims that Chavira "seriously entertained the possibility that these bags contained [defendant's] breakfast, accidentally forgotten in the bed-sheets as [he] packed for his day. [Chavira] entertained that possibility so seriously that he made the conscious choice to refuse to describe the alleged oatmeal as suspected contraband." Based on this hypothetical and Chavira's subjective belief, defendant leaps to the illogical and incorrect conclusion that the cocaine substance's criminal character was not immediately apparent.

¶ 19    Some items that law enforcement officers might associate with "criminal character" do not always demonstrate a reasonable probability that the defendant committed or is committing a crime. For example, it would be unreasonable in some cases to immediately assign criminal character to a firearm, knife, or baseball bat; people commonly use these items as legitimate tools rather than instruments of crime. In this case, however, an objectively reasonable law enforcement officer could immediately infer a *reasonable*

*probability* that defendant's knotted bags contained illicit drugs, not oatmeal. Although it is legal for people to apportion oatmeal in individual plastic bags and store them in bed sheets, this hypothetical possibility does not render the seizure unreasonable.

Detective Chavira testified that the substance's packaging was consistent with that typically used to store illicit drugs. A substance or item's packaging and/or location can legally justify a seizure. See, *e.g.*, *Brown*, 460 U.S. 730 (officer properly seized cocaine after he saw knotted party balloons and white powder in the defendant's car); *Jones*, 215 Ill. 2d 261 (officer properly seized a small wooden box in the defendant's shirt pocket because he had probable cause to associate it with criminal activity). Chavira had probable cause to seize the substance the moment he discovered it hidden beneath defendant's bed sheets in packaging commonly used to store illicit drugs. It is irrelevant whether Chavira subjectively believed that the substance looked like oatmeal, heroin, or a "bad batch" of cocaine; an objectively reasonable law enforcement officer could properly infer that the suspiciously packaged powder in defendant's bed sheets was probably evidence of a crime.

Because defendant's seizure theory cannot justify suppressing the evidence, he cannot establish that counsel's allegedly frivolous search theory undermined confidence in the trial's outcome—the evidence was admissible either way. We affirm his conviction.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Whiteside County.

Affirmed.

JUSTICE HOLDRIDGE, specially concurring:

I agree with Justice Schmidt's analysis, including his conclusion that *People v. Humphrey*, 361 Ill. App. 3d 947 (2005), was wrongly decided. In light of Justice O'Brien's endorsement of the majority opinion in *Humphrey*, I write separately to explain my disagreement with *Humphrey*.

As Justice O'Malley noted in his dissent in *Humphrey*, the *Humphrey* majority misconstrued the probable cause standard and mistakenly applied a subjective test instead of an objective test for determining whether the incriminating character of a substance was "immediately apparent." "[T]he existence of probable cause is a question not of what the officer, possessed of his own peculiar skills and experience, might have believed, but of 'whether [the] historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to *** probable cause.' " *Humphrey*, 361 Ill. App. 3d at 963 (O'Malley, J., dissenting) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).

Evaluated from the perspective of an objectively reasonable police officer, the facts presented in *Humphrey* provided probable cause sufficient to justify a seizure of the pills at issue in that case. After he pulled over the defendant's vehicle, the arresting police officer in *Humphrey* observed a person in the vehicle's passenger seat " 'hunch over' " and perform " 'a lot' " of " 'unusual' " hand movements. *Id.* at 960. When the officer approached the car, he observed "hundreds" of pills stored in a plastic Tupperware container on the floor of the passenger side of the vehicle. The pills had been removed from their original packaging, and

the Tupperware container containing the pills was located "in the very area toward which the passenger apparently was reaching when he was suspiciously hunched." *Id.* In my view, these facts, taken together, would warrant a reasonable police officer to suspect that the pills were illegal contraband, regardless of what the arresting officer actually believed.

¶ 29   Although the majority in *Humphrey* correctly stated that the existence of probable cause does not depend upon whether the arresting officer "knew" that the substance at issue was contraband (*Humphrey*, 361 Ill. App. 3d at 951, 952 (majority opinion)), the *Humphrey* majority's finding of no probable cause and its reasoning belie that statement. The *Humphrey* majority appears to have based its finding of no probable cause entirely on the arresting officer's inability to identify the pills at issue as contraband. It did not consider whether the facts and circumstances presented in the case would have warranted a reasonable police officer to conclude that the pills were likely to be contraband.

¶ 30   In her special concurrence, Justice O'Brien suggests that the Tupperware container at issue in *Humphrey* was "innocent in appearance and not immediately recognizable as contraband," and that the police officer in *Humphrey* suspected that the pills could be contraband "only because of the number of them in the container." I disagree. As noted above, the pills had been removed from their original packaging and were stored in a Tupperware container that was located exactly where the passenger had been suspiciously reaching at the time of the traffic stop. These facts, coupled with the exceptionally large quantity of the pills, rendered the manner in which the pills were stored suggestive of illegal activity.

¶ 31   Accordingly, I do not join Justice O'Brien's effort to rehabilitate *Humphrey*. In my view, *Humphrey* misapplied the probable cause standard governing plain view seizures and reached the wrong result.

¶ 32   JUSTICE O'BRIEN, specially concurring:

¶ 33   I specially concur because while I agree with the majority's disposition, I disagree with its rejection of *People v. Humphrey*, 361 Ill. App. 3d 947 (2005). I believe the case was rightly decided but find it distinguished from the instant case. In *Humphrey*, the seized contraband was discovered in a "small, clear plastic container holding several hundred small white tablets" in plain view. *Id.* at 948-49. The officer could not identify the pills as contraband but was alerted by the number of pills the container held. *Id.* at 949. The container was innocent in appearance and not immediately recognizable as contraband. In contrast, the substance discovered under Lee's bedsheets was packaged like contraband, with smaller knotted baggies inside a larger baggie.

¶ 34   The detective who discovered the cocaine testified that in his experience, the packaging of the unknown substance was consistent with the packaging used for illegal drugs. He provided his professional background and extensive experience in drug case investigation. He thought the substance could be either heroin or a "bad batch" of cocaine. Unlike the officer in *Humphrey*, who suspected the pills could be contraband only because of the number of them in the container, the detective here recognized the substance was potentially contraband based on how it was packaged, even if he was unsure what type of contraband was in the baggies.

¶ 35    I agree with the disposition in *Humphrey* and believe the majority's decision to ignore it is incorrect. However, the facts in this case differ from *Humphrey* in that the substance discovered here was immediately apparent to the detective as contraband by its packaging.

¶ 36    For those reasons, I specially concur.