2021 IL App (2d) 190676-U
No. 2-19-0676
Order filed April 1, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-672 |
| EMILY T. JANNUSCH, | ) ) ) | Honorable Liam C. Brennan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Zenoff and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The plain-view doctrine justified warrantless seizure from defendant's purse of a prescription pill bottle containing Smarties-like candy. The incriminating nature of the items in the bottle was immediately apparent to the officer based on his years of experience with narcotics investigation and his knowledge that one method for ingesting drugs is to apply them to Smarties candies.

¶ 2    Following a stipulated bench trial, defendant, Emily T. Jannusch, was convicted of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2016)) and sentenced to 46 days in jail and 2 years of probation through Treatment Alternatives to Street Crimes. On appeal, she argues that her motion to quash her arrest and suppress the alprazolam, a controlled substance, found in a prescription bottle in her purse should have been granted because, under the plain-view doctrine, it was not immediately apparent that the bottle contained contraband. We determine that the prescription bottle was properly seized,

as the officer who discovered the bottle in plain view immediately believed, based on his training and experience, that the bottle contained illegal drugs. Accordingly, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4      Defendant was arrested for unlawful possession of a controlled substance and unlawful use of an intoxicating compound (720 ILCS 690/1 (West 2016)). Subsequently, she moved to quash her arrest and suppress the illegal drugs that were found in her purse.

¶ 5      At a hearing on her motion, Detective David Lindgren of the Naperville Police Department testified. In March 2019, Lindgren had a little over seven years of experience in the narcotics division. On March 29, 2016, Lindgren responded to a dispatch that someone was "huffing," *i.e.*, inhaling the contents of aerosol cans, in the restroom of the Barnes & Noble in downtown Naperville. When Lindgren arrived at the Barnes & Noble, another officer told him that defendant admitted to huffing in the store's restroom.

¶ 6      Thereafter, Lindgren encountered defendant. He observed that she had a medium-sized purse slung over her shoulder. "[I]mmediately visible" to Lindgren were two aerosol cans in the purse. He described them as 10- to 12-ounce cans that were approximately 8-inches long. Lindgren knew that these types of cans, which he described as air-duster cans, are used for huffing.

¶ 7      When the paramedics arrived, they examined defendant as a precaution because of the report of huffing. During the examination, defendant placed her purse on the floor. When she did so, Lindgren saw the two aerosol cans sticking out of the top of the purse. He removed the cans from the purse. Right after he removed the cans, and without manipulating the purse at all, Lindgren saw a translucent orange prescription pill bottle lying flat in its side. The prescription label on the bottle had defendant's name on it, but Lindgren could not recall what the prescription was for. Lindgren immediately saw three Smarties-like candies at the bottom of the bottle. Although Lindgren could not decipher the colors of the Smarties-like candies, he indicated that they appeared to be different colors. Lindgren stated that his attention was drawn to the bottle because "[he's] had previous experience dealing with drugs that have been applied to Smartie [*sic*] candies."

¶ 8    After Lindgren testified, the State moved for a directed finding. The trial court granted that motion, thus denying defendant's motion to quash her arrest and suppress the evidence seized. In doing so, the court found that, based on defendant admitting to huffing in the bathroom of the Barnes & Noble and Lindgren seeing the aerosol cans protruding out of defendant's purse, the aerosol cans were properly seized. Right when the cans were removed, Lindgren saw the pill bottle containing the Smarties-like candies in plain view. Based on Lindgren's training and experience, he knew that Smarties-type candies are used as a mechanism to ingest controlled substances. Thus, the trial court found that the drugs in the bottle were properly seized.

¶ 9    Defendant moved the trial court to reconsider the denial of her motion to quash and suppress. The trial court denied that motion. The State subsequently *nolle prossed* the unlawful- use-of-an-intoxicating-compound charge, and following a stipulated bench trial, the court found defendant guilty of unlawful possession of a controlled substance. Thereafter, defendant filed a motion for a new trial, arguing again that her motion to quash and suppress should have been granted. The court denied the motion for a new trial, and this timely appeal followed.

¶ 10                                    II. ANALYSIS

¶ 11    At issue in this appeal is whether the trial court erred in denying defendant's motion to quash her arrest and suppress the prescription bottle seized from her purse. When reviewing a trial court's ruling on a motion to quash and suppress, this court applies a two-part standard of review. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). First, we review the trial court's findings of fact and uphold them unless they are against the manifest weight of the evidence. *People v. Hopkins*, 235 Ill. 2d 453, 471 (2009). Second, we review *de novo* the ultimate legal issue of whether the defendant's arrest should have been quashed and the evidence seized should have been suppressed. *People v. Cosby*, 231 Ill. 2d 262, 271 (2008). Here, because the facts are not in dispute, we review *de novo* whether the trial court should have granted defendant's motion. *People v. Miller*, 2014 IL App (2d) 120873, ¶ 25.

¶ 12    Turning to that issue, we first note that both the United States Constitution and the Illinois Constitution protect every person from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const.1970, art. I, § 6. In general, a search is reasonable only if the government first obtains a warrant authorizing the search. *People v. Fulton*, 289 Ill. App. 3d 970, 973 (1997). A warrantless search is deemed *per se* unreasonable unless it is supported by one of a few specifically established exceptions. *People v. Rucker*, 294 Ill. App. 3d 218, 223 (1998). One such exception allows the police to seize contraband that is in plain view. *People v. Jones*, 215 Ill. 2d 261, 271 (2005). The plain-view doctrine justifies a warrantless seizure where (1) the officer is lawfully in the place where he sees the object in plain view; (2) the officer has a lawful right of access to the object; and (3) the incriminating nature of the object is "immediately apparent." *Id.* at 271-72.

¶ 13    Here, the parties do not dispute that the first and second criteria were met. They disagree about whether the third criterion was also met, *i.e.*, whether the incriminating nature of the objects in the prescription pill bottle was "immediately apparent."

¶ 14    " '[I]mmediately apparent' " is equated with " 'probable cause.' " *People v. Humphrey*, 361 Ill. App. 3d 947, 951 (2005). "[P]robable cause to believe that a package contains contraband does not require absolute certainty." *People v. Sinegal*, 409 Ill. App. 3d 1130, 1135 (2011); see also *Texas v. Brown*, 460 U.S. 730, 741 (1983) (describing " 'immediately apparent " as "an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary"). Rather, probable cause exists if the officer who seizes the contraband knows facts and circumstances that are sufficient to justify a reasonable belief, without searching further, that the defendant has committed or is committing a crime. *Jones*, 215 Ill. 2d at 272; *Sinegal*, 409 Ill. App. 3d at 1134-35.

¶ 15    In deciding whether probable cause exists, "[a] court must examine the events leading up to the search and seizure, and then decide whether [those] historical facts, viewed from the standpoint of an objectively reasonable *** officer, amount to probable cause." *Jones*, 215 Ill. 2d at 274. "[W]hat constitutes

probable cause for searches and seizures must be determined *** with the officer's *skill and knowledge* being taken into account." (Emphasis in original.) *Id.* at 275.

¶ 16    Here, it was immediately apparent to Lindgren, *i.e.*, he had probable cause to believe, that the Smarties-like candies in the pill bottle were contraband. Specifically, when Lindgren removed the aerosol cans from defendant's purse, he saw different colored Smarties-like candies in a translucent orange pill bottle lying in defendant's purse. Lindgren, who had seven years of experience as a police officer in the narcotics division, testified that he has seen Smarties candies laced with illegal drugs. Although it is true that the Smarties-like candies in the pill bottle could have been just candy, probable cause does not require, as indicated above, that Lindgren knows with certainty that the objects in the bottle were in fact contraband. *State v. Dills*, 528 P.2d 1354, 1355 (Or. 1974) (chance that pills seen in prescription bottle were aspirin and not illegal drugs did not diminish officer's probable cause determination, which was based on officer's training and experience, that the bottle contained contraband and not aspirin).

¶ 17    Relying on *Humphrey* and distinguishing *Jones*, defendant argues that it was not immediately apparent to Lindgren that the pill bottle contained contraband. In *Humphrey*, this court affirmed the suppression of pseudoephedrine, which is used to make methamphetamine (an illegal drug), that an officer observed in plain view in the defendant's car. *Humphrey*, 361 Ill. App. 3d at 948-49. We did so because, although the officer thought that the pills could be contraband given the large amount he saw, the officer had no idea what the pills were. *Id.* at 950-51. Indeed, even after the officer learned that the pills were pseudoephedrine, he was not even sure that possession of the pills was an arrestable offense. *Id.* at 951.

¶ 18    *Humphrey* clearly does not control here. Unlike the officer in *Humphrey*, Lindgren immediately believed upon seeing the pill bottle that the Smarties-like candies in the bottle were contraband.

¶ 19    In *Jones*, our supreme court concluded that contraband found in a wooden " 'one-hitter' box" was properly seized. *Jones*, 215 Ill. 2d at 264, 275. The court determined that, based on the officer's training and experience, which included seizing contraband found in " 'one-hitter' boxes" before, the officer had probable cause to believe that the box he seized from the defendant also contained contraband. *Id.* at 275.

¶ 20    Defendant claims that the illegal drugs Lindgren seized from the prescription bottle should have been suppressed because, unlike the box in *Jones*, prescription bottles like the one found here are "mostly used for a legitimate purpose." While that may be true, Lindgren, unlike the officer in *Jones*, was able to immediately see through the translucent prescription bottle and observe Smartie-like candies, which he knew people have used to coat with illegal drugs.

¶ 21    In her reply brief, defendant relies on *People v. Williamson*, 241 Ill. App. 3d 574 (1993), abrogated on other grounds by *People v. Gipson*, 203 Ill. 2d 298 (2003). We find *Williamson* unpersuasive on these facts. The fact that Lindgren could discern the illegal nature of the objects in the bottle without opening it makes this case distinguishable from *Williamson*. *Id.* at 576, 583 (opaque prescription bottle found in glove compartment not properly seized, because officer had to open it to determine what it contained).

¶ 22    Given Lindgren's training and experience, we must conclude that Lindgren had probable cause to believe that the Smarties-like candies found in the translucent prescription bottle in defendant's purse were contraband. Accordingly, defendant's motion to quash her arrest and suppress the illegal drugs was properly denied.

¶ 23                                   III. CONCLUSION

¶ 24    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 25    Affirmed.